OPINION OF THE COURT
Edwin S. Shapiro, J.
The defendant, charged with aggravated harassment in the second degree, a class A misdemeanor, pursuant to section 240.30 (1) of the Penal Law, has moved to dismiss the charge pursuant to CPL 100.40 on the ground that the accusatory instrument is defective, and pursuant to CPL 210.40 on the ground that the circumstances surrounding this action warrant a dismissal in the interest of justice.
The Statute
Penal Law § 240.30 (1) provides in pertinent part:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
“1. Communicates * * * by mechanical or electronic means * * * with a person * * * by telephone * * * in a manner likely to cause annoyance or alarm.”
Facial Sufficiency
An information is sufficient on its face if it contains nonhearsay allegations of an evidentiary nature that provide reasonable cause to believe that the defendant committed every element of the crime charged. (CPL 100.15 [3]; 100.40 [1] [a], [b], *73 [c]; People v Alejandro, 70 NY2d 133 [1987].) In determining the factual adequacy of the accusatory instrument, the court may consider both the information and any supporting depositions. (CPL 100.15 [3].)
The Accusatory Instrument
The following is a summary of the relevant facts which were stated within the four corners of the misdemeanor complaint and the supporting deposition: On April 19, 2001 at approximately 7:40 p.m., the defendant telephoned Stony Lodge Hospital in the Town of Ossining where her son, S.W.,[2] was a patient undergoing psychiatric evaluation. Jean Reece, a nurse, received the call, raised the receiver, and stated to the complainant, Deborah Flynn-Capalbo, “it is her.” Complainant “knew exactly who Jean was talking about because [she had] received six telephone calls from the same person [name redacted], within the last two hours on that day.” Ms. Reece asked the caller who it was that she wanted to talk to and at that point handed the telephone to the complainant, who is the program director of children services in the hospital. The complainant heard the female caller state, “I want to talk to my son [name redacted].” The complainant handed the telephone receiver back to Ms. Reece, whom she heard tell defendant that she was instructed not to permit her to speak with her son. Complainant heard defendant screaming and Ms. Reece repeating, “I have been instructed, I am the nurse.” Ms. Reece placed the telephone receiver so that both she and the complainant could hear what was being said. Ms. Reece advised defendant, “Miss Debbie [the complainant] said that you are aware of this.” Thereupon complainant heard the defendant state:
“I do not know why Miss Debbie is doing this to me. No, you are wrong. Miss Debbie said I could talk to him. Miss Debbie is doing this to me, she better give me my son back, she does not know who she is playing with. She better be careful, she does not know who I am bringing next week. She will see next week, what will happen to her. She is doing this to me, I am telling you, she will see what will happen, she better give me my son or else. I will have many people with me.”
The supporting deposition of “Miss Debbie” further stated that *74 defendant then began to repeat herself while shouting into the telephone that “[complainant has] become increasingly fearful for both [her] professional and personal safety,” that defendant’s “impulsive, erratic, irrational and verbally aggressive behavior towards [her] * * * has escalated dramatically the last four weeks * * * is harassing, annoying and alarming to [her] and has made [complainant] fearful what she is capable of doing to [her] in the future.”
Contentions of the Parties
Defendant claims that the accusatory instrument is insufficient on its face, contending that it lacks facts to support the necessary intent to harass, annoy, threaten or alarm the alleged victim because she did not speak to the victim during the subject telephone call, did not ask to speak to the victim, and did not know that the victim would be eavesdropping on a telephone conversation with a third person.
The People respond that the charge of aggravated harassment does not require that the communication be made directly to the person intended to be alarmed or annoyed, and that Penal Law § 240.30 (1) only requires that there be a communication and that the communication is done intentionally to cause annoyance or alarm. Citing People v McKay (140 Misc 2d 696 [Nassau Dist Ct 1988]), the People contend that the elements of Penal Law § 240.30 (1) are satisfied by a communication intentionally made to one individual which causes alarm to a third person, and that, therefore, it is not necessary that the subject of the communication be the same as the person to whom the threat was made.
Analysis and Conclusions of Law
I. Were the facts alleged in the accusatory instrument sufficient to establish a prima facie case under the harassment statute?
If there were ambiguity in the language of the statute, the rule of lenity would require an interpretation favoring the defendant. However, People v McKay, cited by the People (supra, at 698), traces the history of Penal Law § 240.30 (1) and concludes that “the present statute does not require that the subject of the communication be the same person to whom the communication is made.” Moreover, this Court finds no ambiguity in the language of the statute. If the Legislature had intended not to include third parties, it could have substituted “that person” for “a person,” thereby defining “another person” *75 as “the same person.” Therefore, the Court concludes that the most natural meaning of the language of the statute includes third parties, and that, as such, the statute is clear on its face.
People v McKay (supra), however, differs from the instant case, for although the threat was against the third party in McKay, the complainant and alleged victim was the person to whom the defendant spoke on the telephone, whereas in this case, the complainant was the third party. On the authority of McKay, therefore, Ms. Reece could have been the complainant in this case even though the alleged threat named another person, “Miss Debbie.” Nevertheless, for the purpose of determining whether a prima facie case has been established, this Court reads the statute as also encompassing “Miss Debbie” as an intended victim. Certainly she was the person most affected by the alleged threat, and the Court concludes that the language of the statute is broad enough to apply to and protect her and other persons similarly situated. Moreover, the “eavesdropping” issue appears to be a “red herring” with regard to the issue of intent, for the nature of the communication was such that defendant’s threat, if made, was reasonably intended by her to be passed on to “Miss Debbie.” Otherwise, why make the threat? So, whether the complainant overheard it or was advised of it by the direct recipient is of no consequence. By analogy, the Court’s conclusion is supported by People v Miguez (147 Misc 2d 482 [Crim Ct, NY County 1990], affd 153 Misc 2d 442 [App Term, 1st Dept 1992]) and People v Shropshire (181 Misc 2d 77 [Crim Ct, Richmond County 1999]), where it was held that messages left on an answering machine or a beeper are sufficient to satisfy the statutory requirement that a communication occur. In the case before this Court, the accusatory instrument alleges that the defendant telephoned the place of employment of the victim and left a message for her with Ms. Reece (instead of recording it on an answering machine). Viewed from that perspective, perhaps characterizing the alleged victim “Miss Debbie” as a third party is also a “red herring.” In any event, read in the context of the plain language of the statute, the accusatory instrument was factually adequate to establish a prima facie case, and this Court so concludes.
II. Does the statute’s application to the facts alleged in the accusatory instrument violate defendant’s constitutional rights?
Although the statute is broad enough to cover the communication in this case, the next question is whether its application to it is a violation of defendant’s rights to due process and freedom of speech under the Fourteenth Amendment of *76 the United States Constitution and article I, § 8 of the New York State Constitution.
In People v Dietze (75 NY2d 47 [1989]), under a prior harassment statute, Penal Law § 240.25, the Court of Appeals reviewed a defendant’s conviction on the following facts: knowing that the complainant was retarded, and having been previously warned by a police officer not to argue with the complainant, defendant nevertheless confronted her on the street, calling her a “bitch,” and her son a “dog.” As the defendant further screamed that she would “beat the crap out of [complainant] some day or night on the street” (at 50), complainant ran away in tears. The Court of Appeals concluded (at 54), “While genuine threats of physical harm fall within the scope of the statute, such an outburst, without more, does not.” A majority declared the statute unconstitutional on its face and stated that speech may be forbidden or penalized only if it reasonably places the recipient in fear of immediate danger of severe harm. A concurring opinion by Chief Judge Wachtler concluded that the statute should not have been invalidated, but agreed that the communication under review did not rise to that level. However, as noted by Donnino, Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.30, at 391), “The former harassment statute did not include in the alternative an intent to threaten.”
In affirming the New York County Criminal Court decision of People v Miguez (supra), the Appellate Term, First Department, upheld the constitutionality of Penal Law § 240.30 (1), the applicable statute herein. People v Price (178 Misc 2d 778 [Crim Ct, NY County 1998]), which involved facts strikingly similar to those in the present case, distinguished Dietze (supra) and cited Miguez with approval. In Price (at 779), as in the instant case, the defendant was charged with violating Penal Law § 240.30 (1), and was alleged to have sent a letter to his attorney, the complainant, stating “I’m going through all this shit with you, you better be careful, I won’t be responsible if you speak to me like that again.” On the same day, the defendant left the attorney a telephone message, stating “you’re playing with fire, you better get me my apartment free and clear with no rent for five years * * * I [sic] be at [your address], no doors will keep me out, you better perform magic on Thursday.” (Id.) Two days later, defendant stated to complainant in court, “I’ll get you,” while “shaking his hand” at her (id.). Whether or not we are still bound by the dicta in Dietze (supra), in the view of this Court, the harm that was threatened *77 in Price and in the present case reasonably could be construed to reach the level required by Dietze. (Cf. People v Yablov, 183 Misc 2d 880 [Crim Ct, NY County 2000].) In distinguishing the facts before it from those in Miguez and Price, the court in Yablov found (at 886):
“the facial sufficiency standard enumerated in Price and Miguez (supra) is not met in this case. In Price, defendant is specific in time and place of threatened harm. Defendant is specific in the ultimatum that will result in the threatened harm. Also, the short duration — a matter of days — between the communication of the threat and the threatened harm creates a genuine urgency of expectancy. In short, defendant’s threat is clear, unambiguous, and immediate. Here, no such specificity of threat or clarity of intent or exigent circumstance exists.”
Applying these standards, the threatened harm in this case, as in Price, was specific in time, place and duration, and the duration, a matter of days, was short. Also, in this case, according to the accusatory instrument, there was verbally aggressive behavior by the defendant toward the complainant over a period of four weeks, followed by six telephone calls by defendant to complainant within the two hours preceding the threats conveyed via the agitated telephone message left with Ms. Reece. Under these circumstances, if proved beyond a reasonable doubt, a jury reasonably could find that the defendant’s communications escalated in intensity and specificity to the point that they instilled fear of impending or imminent, if not immediate, danger of severe harm in the mind of the alleged victim. Since the behavior charged may well rise to this level, the statute’s application to it appears fair and appropriate, and this Court holds that the defendant’s rights to freedom of speech have not been violated.
As to due process considerations beyond “freedom of speech,” the questions are whether the harassment statute is unconstitutionally vague and overbroad so that (1) it can be arbitrarily enforced or (2) a defendant could be unaware of his criminal conduct. If it can be shown that enforcement is in “retaliation or deter [rence of] * * * protected speech,” a federal court can enjoin the state prosecution under Penal Law § 240.30 (1). (Schlagler v Phillips, 985 F Supp 419, 420 [SD NY 1997], injunction vacated 166 F3d 439, 443.) However, in People v Shack (86 NY2d 529 [1995]), the Court of Appeals noted, “enforcement of [Penal Law § 240.30 (2)] is unlikely to occur in *78 the absence of a victim’s complaint to authorities,” and declined to invalidate the statute as “overbroad” or “vague” on the application of a defendant who “did not suffer a violation of his right to free speech” (at 539), simply because “the statute may be vague when applied to the potential conduct of others” (at 538). The defendant in the instant case is similarly situated, and this Court finds no issue of “arbitrariness.”
Next, is the question of whether the statute is vague to the extent that it fails to give adequate notice to the defendant of the criminal nature of her alleged conduct. “Whether a statute is unconstitutionally vague is measured by whether it provides notice to ‘a person of ordinary intelligence * * * that his contemplated conduct is forbidden by the statute.’ ” (People v Shack, supra, at 538.) And, since Penal Law § 240.30 includes the element of specific intent, “the Legislature has removed the possibility that a defendant could be unaware of his criminal conduct.” (People v Shack, supra, at 539.)
As to both notice and intent, while it may be true that, under some circumstances, a communication left on an answering machine, or with a live “messenger,” of a threat to a person may be more bellicose or fearsome than if made directly to that person, the opposite may also be true. In the Court’s final analysis, the very nature of the alleged threat in issue, and its communication to the institution where the victim is employed, disqualifies it from such speculative mitigating distinctions. And, as intrusive as eavesdropping may be in the abstract, it was understandable in the instant case, and perhaps justified by the history of the defendant’s alleged prior objectionable behavior towards the victim. Finally, as previously noted, even if defendant’s alleged threat had not been directly overheard, it was repeated more than once in such a manner and context that defendant reasonably intended that it be reported to the complainant. At least a jury could properly so find.
In sum, the Court finds that the harassment statute, as applied to this case, has met both of the “due process” tests. Therefore, it concludes that defendant’s due process rights will not be violated in applying the statute to her alleged scary behavior.
For the reasons stated, the information is deemed sufficient, and the defendant’s motion to dismiss on this ground, or on the constitutional grounds raised sua sponte, is hereby denied.
Dismissal in the Interest of Justice
Additionally or alternatively, the remaining branch of defendant’s motion seeks dismissal in the interest of justice. In *79 support of such relief, defendant alleges facts that may or may not be true. And, as stated in the People’s memorandum of law, she attempts to minimize the nature of the crime with which she is charged by alleging that her conduct did not involve the alleged victim. That branch of defendant’s motion has been denied, and no other “compelling factor justifying dismissal” pursuant to CPL 210.40 (1) has been established to the satisfaction of the Court. Consequently, this branch of defendant’s motion is also denied.

. The full name of defendant’s child is contained in the accusatory instrument, but redacted from this opinion for the reason stated in footnote 1.