OPINION OF THE COURT
Edwin S. Shapiro, J.
The defendant, Jose A. Chaves, is charged with two counts of aggravated harassment in the second degree, a class A misdemeanor, pursuant to section 240.30 (1) of the Penal Law. He has moved to dismiss both accusatory instruments on the grounds that (1) they are facially insufficient and defective as a matter of law; (2) the statute is unconstitutional on its face; and, alternatively, (3) it is unconstitutional as applied to the charges made in this case. He also asks for dismissal of the second count on “speedy trial” grounds pursuant to CPL 30.30 (1) (b).
The Accusatory Instruments
According to the first misdemeanor complaint and its supporting deposition, on January 8, 2006 the defendant, whose voice was recognized by the complainant as that of a former tenant, is alleged to have telephoned the complainant at her home, asking her “how are you doing, bitch,” and about five minutes later to have called again and spoken to the person who picked up the phone, stating that he was going to “fuck [complainant] and make [her] suck [his] dick.” Presumably unknown to the defendant, the complainant had also picked up the phone and overheard the conversation. The accusatory instrument alleges that both of these telephone calls were intended to and did, in fact, cause her to suffer “alarm” and “fear for her safety.”
The second count alleges that the defendant phoned complainant at her home on January 20, 2006 and again asked her, “[h]ow are you doing, bitch?” at which point the complainant, having recognized the defendant’s voice as that of the same former tenant from whom she had received several prior threatening phone calls, in fear for her safety, hung up the phone.
The Statute
Penal Law § 240.30 (1) provides in pertinent part:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
*784 “1. Either (a) communicates ... or
“(b) causes a communication to be initiated by mechanical or electronic means . . . with a person ... by telephone ... in a manner likely to cause annoyance or alarm.”
Analysis and Conclusions of Law
Speedy Trial
As of the time the defendant’s motion was filed, no supporting deposition had been filed as to the second charge. Therefore, the misdemeanor complaint had not been converted to a valid accusatory instrument, as required by CPL 170.65. However, a supporting deposition and a written statement of the People’s readiness were filed with the People’s affirmation in opposition to this motion. The defendant’s argument that more than 90 days had elapsed since his arraignment on the charge is challenged in the People’s memorandum of law. In computing the time within which the People must be ready for trial, pursuant to CPL 30.30 (4), any period of delay resulting from adjournments at the request of or with the consent of the defendant is to be excluded. Using that applicable test, the defendant has stated no facts to controvert the People’s claim that the delay of over 90 days was caused by adjournments requested by him. Consequently, we conclude that the second misdemeanor complaint was properly converted within the time that the People are required to be ready for trial pursuant to CPL 30.30 (1) (b). (Cf. People v Gibson, 135 Misc 2d 672 [Ossining Just Ct 1987].) Therefore, to the extent that defendant’s motion seeks dismissal of the second count on “speedy trial” grounds, it is denied.
Sufficiency of the Accusatory Instruments
The defendant also claims that the first accusatory instrument is insufficient on its face, contending that it lacks a proper statement of the required “intent” to harass, annoy, threaten or alarm the alleged victim because during the second phone call of January 8, 2006 he did not speak to the “victim,” did not ask to speak to the “victim,” and did not know that the “victim” would be eavesdropping on his telephone conversation with a person other than herself.
Tracing the history of Penal Law § 240.30 (1), People v McKay (140 Misc 2d 696 [Nassau Dist Ct 1988]), concluded that the statute does not require that the subject of the communication be the same person to whom the communication is made. In *785 McKay, the threat communicated to the victim was against a third party. Unlike McKay, the complainant here was the person to whom the defendant reasonably intended the message to be delivered.
Comparing a proscribed threat left with a “messenger” to one left on an answering machine, this court has held that the charge of aggravated harassment under the statute does not require that the communication be made directly to the person intended to be alarmed or annoyed and that the statute includes threats reasonably intended to be passed on to the victim by a “messenger.” (People v P.S., 189 Misc 2d 71 [Ossining Just Ct 2001].)
This court also reasoned:
“[T]he ‘eavesdropping’ issue appears to be a ‘red herring’ with regard to the issue of intent, for the nature of the communication was such that defendant’s threat, if made, was reasonably intended . . . to be passed on to [the victim]. Otherwise, why make the threat? So, whether the complainant overheard it or was advised of it by the direct recipient was of no consequence.” (Id. at 75.)
As this court concluded in People v P.S. (189 Misc 2d 71, 74-75 [2001]), the most natural meaning of the language of the statute includes third parties, and that, as such, the statute is clear on its face. The court also finds that the factual allegations are sufficient to allow a jury to determine whether they are true, and, if so, to find that the defendant acted with intent to harass the victim when he invaded her privacy by means of uninvited, ad feminam, and threatening telephone calls to her home, including the threat of inflicting upon her an obscene sexual attack, including rape.
In applying the statute and the applicable case law to the content of the accusatory instruments, the court concludes that all of the necessary elements required by the statute are stated. (See People v Califano, 12 Misc 3d 1189[A], 2006 NY Slip Op 51504[U] [Crim Ct, NY County 2006].) Consequently, unless the statute is unconstitutional as applied to the defendant’s conduct, or declared unconstitutional on its face, dismissal of the defendant’s motion is warranted.
Applicability of First Amendment to the Present Charges
The defendant argues that the conduct with which he was charged under Penal Law § 240.30 (1) was protected speech and expression as guaranteed by the First and Fourteenth amend *786 ments of the United States Constitution and article I, § 8 of the New York State Constitution, and, therefore, that the statute was unconstitutional as applied to the charges made against him.
Myriad cases distinguish speech thus protected from unprotected speech, e.g., People v Shack (86 NY2d 529 [1995]); People v Goldstein (196 Misc 2d 741 [App Term, 2d Dept 2003]); People v Mangano (100 NY2d 569 [2003]).
In Mangano (at 570), the defendant left
“five messages ... on [a Parking Violations] Bureau’s telephone answering machine after hours . . . After mentioning license plate numbers and vehicles, defendant rained invective on two village employees, wished them and their families ill health, and complained about their job performance, as well as the tickets that she had received.”
In finding (at 571) that although the “defendant’s messages were crude and offensive[, they were] made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public.” It was against that backdrop that the High Court concluded that the messages did not “fall within any of the prescribable classes of speech or conduct.” (Id.)
In contrast to Mangano, according to the charges made in this case, the defendant’s phone calls (1) were not made in protest against governmental acts; (2) included threats of an obscene sexual attack; and (3) were addressed to the alleged victim at her home. As the Appellate Term concluded in Goldstein (196 Misc 2d at 746), where the defendant’s message was that he would “take [the complainant] down,” this court also concludes that “the aggravated harassment statute is properly directed to communications, made to an unwilling recipient, wherein ‘substantial privacy interests are being invaded in an essentially intolerable manner’.” (Id. at 747; see also People v Tiffany, 186 Misc 2d 917 [Crim Ct, NY County 2001].) Therefore, on the basis of common sense, as supported by settled case law, the court holds, on the facts alleged in this case, that the alleged victim’s right of privacy clearly trumps the right of the defendant to express, in a call to the complainant’s home, his intention to sexually attack her.
Based on the court’s analysis, a jury could reasonably find that the defendant not only intentionally invaded the *787 complaint’s right of privacy in her home, but also that his verbal utterances, under both counts, were vile, continuing, and so threatening as to cause the alleged victim to reasonably “fear for her safety.”
Applicability of the First Amendment to the Statute on its Face
The defendant argues, without conceding, that however intrusive, outrageous, and threatening his conduct may have been, his rights, and the rights of others, to freedom of speech and expression as guaranteed by the First and Fourteenth amendments and the New York State Constitution, as previously referenced, were infringed upon because the statute under which he was charged is unconstitutional on its face as (1) over-broad and (2) impermissibly vague — overbroad because it purports to prohibit both constitutionally protected speech as well as unprotected speech, and impermissibly vague because “the statutory language would signify one thing, but, as a matter of judicial decision, would stand for something entirely different.” (People v Dietze, 75 NY2d 47, 53 [1989].)
In support of his facial challenge of the statute, the defendant cites Gooding v Wilson (405 US 518, 522 [1972]), and rightly contends that in order for a statute governing speech to pass constitutional muster, it must be “carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression . . . [b]ecause First Amendment freedoms need breathing space to survive.”
The question, thus, is whether Penal Law § 240.30 (1) is sufficiently narrow to pass the applicable tests as set forth by the New York State Court of Appeals. In People v Dietze (75 NY2d 47 [1989]), the High Court invalidated Penal Law § 240.25 (2), a former and different harassment statute, as overbroad. The majority reasoned that since the statute’s language “does not even suggest a limitation to violence-provoking or substantial injury-inflicting utterances . . . [a]n attempt by this court to so limit the statute would, thus, be tantamount to wholesale revision of the Legislature’s enactment, rather than prudent judicial construction.” (Id. at 52-53.)
In a concurring opinion, former Chief Judge Wachtler disagreed. However, in applying the statute to the facts of the case, he concluded that the particular speech before the Court was constitutionally protected, and therefore, he concurred with the result of the decision of the majority in its dismissal of the charges.
*788 Restricted to communications by telephone, telegraph, or by mail, Penal Law § 240.30 (1) appears narrower than the statute struck down in Dietze. However, it is apparently still broad enough to cover both protected and unprotected speech. Nevertheless, in affirming a conviction under Penal Law § 240.30 (2), the Court of Appeals, in People v Shack (86 NY2d 529, 537 [1995]), declined to invalidate the statute as overbroad, stating that the “defendant may not rely on the theoretical overbreadth of Penal Law § 240.30 (2) to challenge his conviction under the statute.” Thus, the High Court concluded in pertinent part: “[T]he statute adequately describes an element of the proscribed conduct, and provides sufficient notice to potential offenders and sufficient guidelines to those who would enforce the statute and that defendant has failed to overcome the presumption of validity which attaches to legislative enactments” (Shack at 539.)
In Mangano (100 NY2d 569 [2003]), the Court of Appeals was faced with a challenge to the arguably broader subdivision (1) of the statute, the subdivision here at issue. However, in apparently following but not referring to Shack and former Chief Judge Wachtler’s concurring opinion in Dietze, the High Court refrained from striking down the statute. Instead, in accordance with the well-established policy of favoring the preservation of legislative enactments whenever possible, as unsuccessfully urged by Judge Wachtler in Dietze, the High Court was able to find a narrower ground for its dismissal of the charges. Thus, in Mangano, the Court could, and did, rule in favor of the defendant on the ground that the statute should not have been applied to the particular abusive verbal conduct that it had concluded was constitutionally protected speech.
Conclusion
As this court previously concluded, the defendant’s alleged threatening conduct in the present case was not protected speech as it was in Mangano. Therefore, the charges against him cannot be dismissed unless this court was to declare Penal Law § 240.30 (1) unconstitutional on its face. However, although prejudicial misapplication of the statute to protected speech still persists, the court is bound to follow Shack and Goldstein rather than Vives v City of New York (305 F Supp 2d 289 [SD NY 2003], revd in part 405 F3d 115 [2d Cir 2005]), a recent decision of the United States District Court for the Southern District of New York which declared Penal Law § 240.30 (1) facially invalid as to most of its content.
*789 Having rejected the defendant’s other well-presented arguments, this court must now, therefore, also conclude that Penal Law § 240.30 (1) is not unconstitutional on its face. Accordingly, both counts of aggravated harassment in the second degree are sustained, and the defendant’s motion is denied in all respects.