OPINION OF THE COURT
Carol R. Edmead, J.
On August 14, 1999, defendant was arrested and charged with Penal Law § 240.30 (1), aggravated harassment in the second degree. On September 27, 1999, the People filed and served an amended complaint adding Penal Law § 240.26 (1), harassment in the second degree. The complaint alleges that after the complainant ended his romantic relationship with the defendant, defendant left a series of messages on the complainant’s answering machine over a 17-month period. On one occasion, from approximately 6:00 p.m. until 6:00 a.m., the complainant received at least 22 calls from the defendant.
Defendant now moves to dismiss the information for facial insufficiency pursuant to CPL 170.35 (1) (a) and 100.40, and violation of constitutional rights under the First and Fourteenth Amendments of the United States Constitution and article I, §§ 8 and 11 of the New York Constitution.
Defendant challenges the sufficiency of the accusatory instrument, arguing that the communication and/or speech complained of does not establish each element of the crimes of harassment and/or aggravated harassment. Defendant also challenges whether her behavior rises to the level of harassment, thereby excluding it from the protections of freedom of speech of both the Federal and New York Constitutions.
The People do not address any of defendant’s arguments in their response papers to defendant’s omnibus motion. They simply state that the information meets the requisite standard for facial sufficiency.
With respect to the charges of harassment and aggravated harassment, this court finds that defendant’s actions, albeit of *882 fensive and obnoxious, were not criminal within the meaning of the harassment laws. Therefore, defendant’s motion to dismiss the charges in the accusatory instrument for facial insufficiency is granted.
Analysis
I. Facial Sufficiency
An information is sufficient on its face if it contains nonhearsay allegations of an evidentiary nature that provide reasonable cause to believe the defendant committed every element of the offense charged. (CPL 100.15 [3]; 100.40 [1] [a], [c]; People v Alejandro, 70 NY2d 133, 137 [1987]; People v Hall, 48 NY2d 927 [1979].) Allegations provide reasonable cause “when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight or persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it.” (CPL 70.10 [2].) Therefore, the facts may establish a prima facie case, for purposes of pleading an offense, even if those facts would not be legally sufficient to prove guilt beyond a reasonable doubt. (People v Jennings, 69 NY2d 103, 115 [1986].)
II. Facial Sufficiency of the Accusatory Instrument
Defendant argues that the complaint is facially insufficient because the People have failed to establish that the statements and actions made by defendant constitute harassment — aggravated or otherwise.
The entire factual portion of the accusatory instrument states:
“Deponent states that deponent has known defendant since 1991, that deponent ended his relationship with the defendant in March of 1998, that between March 1998 and August 1999 deponent received a series of annoying, threatening and unsolicited phone communications from the defendant, as more fully described below, and that on each occasion the deponent recognized the voice of the caller to be that of the defendant.
“Deponent further states that in March of 1998, deponent received a phone call from defendant at deponent’s home and that defendant left a message on deponent’s answering machine, stating in substance, ‘if i don’t get the money you MAKE TOMORROW, f ‘l [sic] GO TO THE NEXT STEP. I HAVE SO MANY IRONS IN THE FIRE, YOU DON’T KNOW WHAT THE FUCK IS GOING *883 on! you’ll BE VULNERABLE, we’ll GET YOU DAVID, we’ll GET you!’
“Deponent further states that in April of 1998, deponent received a phone call from defendant at deponent’s home and that defendant left a message on deponent’s answering machine, stating in substance, ‘pay me or see me! i laid it RIGHT ON THE LINE FOR YOU.’
“Deponent further states that on July 25, 1998, at approximately 21:02 hours, deponent received a phone call from defendant at deponent’s home and that defendant left a message on deponent’s answering machine, stating in substance, ‘DAVID — DAVID—DAVID—FUCK YOU DAVID! ARE YOU THERE? It’s 9 PM SATURDAY NIGHT. ARE YOU OUT DRINKING, DANCING, CAROUSING? FUCK you! fuck you!’
“Deponent further states that on July 25, 1999, beginning at 17:58 hours, and continuing through the night until 5:58 hours on July 26,1999, defendant called deponent at deponent’s home at least 22 times.”
This court determines that, for purposes of defendant’s motion, viewing the allegations in the accusatory instrument as true, as required at this juncture, the complaint is facially insufficient to charge defendant with harassment or aggravated harassment.
The court reaches its determination by analyzing harassment and aggravated harassment in a legislative and historical perspective, as well as applying the statutes to the facts in this case.
III. Legislative History
The violation of harassment was first enacted as part of the New York Penal Law in 1965. (See, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.26, at 381.) The offenses included ranged from acts as serious as physical attacks on others to the use of abusive or obscene language. A recent New York Law Journal article stated that: “[t]he initial study bill submitted to the Legislature consisted of 11 provisions, including threatening telephone calls, jostling, confidence games, false reports to law enforcement agencies and indecent exposure. Seven of these, however, were extracted: six because they were ‘deemed to proscribe conduct too serious for “harassment’s” limited penalty,’ and one — involving ‘annoying taunts or challenges’ was ‘simply abandoned because of its triviality.’ ” (Abramovsky, The Charge and Misuse of Harassment, NYLJ, Sept. 8, 1997, at 3, col 1.) In *884 1992, the Legislature again revisited the offense of harassment, the challenge being to give effect to the statute but to avoid bringing in a large volume of trivial personal arguments within the ambit of the criminal law. (See, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.26, at 381.)
Three years prior to the 1992 revision, the New York Court of Appeals changed the course of the harassment statute in People v Dietz (75 NY2d 47 [1989]).
The Court of Appeals has held that vulgar and offensive words are protected speech under the New York State and Federal Constitutions unless the speech is over and above that. (People v Dietz, 75 NY2d 47, 52 [1989], supra [“(a)ny proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace”].) The Court held that speech may only be forbidden or penalized if it manifests itself to the extent the individual feels he or she is in immediate danger of severe harm. (Supra.) The defendant called the complainant a “bitch” and her son a “dog” knowing that the complainant was retarded and notwithstanding the fact that the defendant had been warned by a police officer to cease arguing with the complainant in the future. The complainant ran away from the defendant in tears as the defendant was screaming that she would “ ‘beat the crap out of [the complainant] some day or night on the street.’ ” (Supra, at 50.) The Court found that although clearly “abusive” and “coarse,” “insulting” and “harsh,” defendant’s language constituted protected expression under the time-honored principles underlying free speech as guaranteed by the First Amendment. (Supra, at 51.)
The parameters of the harassment statute are enunciated well in People v Malausky (127 Misc 2d 84, 86 [Rochester City Ct 1985]): “That the facts alleged may describe annoying behavior is not enough to support prosecution of the charge * * * [i]n a free society, such as ours, citizens are subjected to a degree of annoying behavior which, most likely, in a police State would not be tolerated. But merely because a person behaves in an immature, immoderate, rude or patronizing manner which annoys another is not enough to cause the actor to suffer criminal sanctions. He must intend that such behavior annoy, harass or alarm another. This court will condone neither poor judgment nor bad taste. But, by the same token, this court will not criminalize such behavior where to do so would *885 exceed the fair import of the statutory language defining the offense harassment.”
IV. The Harassment Statutes
A. Penal Law § 240.30 (1)
Penal Law § 240.30 (1) provides:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
“1. Communicates, or causes a communication to be initiated by mechanical or electronic means or otherwise, with a person, anonymously or otherwise, by telephone, or by telegraph, mail, or any other form of written communication, in a manner likely to cause annoyance or alarm.”
Two recent criminal court cases that are illuminating but not controlling are People v Price (178 Misc 2d 778 [1998]) and People v Miguez (147 Misc 2d 482 [1990], affd on other grounds 153 Misc 2d 442 [1992]). In Price, as in the instant case, defendant was charged, inter alia, with Penal Law § 240.30 (1), aggravated harassment in the second degree. (178 Misc 2d, at 779.) The defendant sent a letter via Federal Express to the complainant, his attorney, which stated: “ Tm going through all this shit with you, you better be careful, I won’t be responsible if you speak to me like that again.’ ” (Supra, at 779.) That same day, the defendant left the complainant a message stating “1 [y] ou will be fucking sorry, you’re playing with fire, you better get me my apartment free and clear with no rent for five years, that’s the only way it will be balanced, F [sic] be at [the complainant’s address], no doors will keep me out, you better perform magic on Thursday.’ ” (People v Price, 178 Misc 2d, at 779.) Two days later, defendant, while at court, stated to complainant, “ ‘I’ll get you,’ ” while “ ‘shaking his hand’ ” at her. (Supra, at 779.) This incident occurred on the date and in the location referred to in the Federal Express letter. (Supra.) The court found the complaint facially sufficient because the defendant’s use of the telephone and mail to communicate his threats constituted an invasion of the complainant’s privacy interest and, in conjunction with the content of the two communications, evinced an intention to harass, annoy, threaten or alarm the complainant. (Supra, at 783.)
The court in Price (supra) relied heavily on People v Miguez (147 Misc 2d 482 [1990], supra). In People v Miguez, the court held that the complaint, alleging that defendant “repeatedly *886 made phone calls to the complainant, left messages on his answering machine and paged him, interfering with his medical practice” was facially sufficient under Penal Law § 240.30 (2), despite the fact that the People charged subdivision (1) instead. (Supra, at 485 [emphasis added].) Yet the distinction between subdivisions (1) and (2) is critical. Subdivision (1) of Penal Law § 240.30 “ ‘requires that a communication occur’ ” and subdivision (2) is “ ‘primarily aimed at two types of harassing telephone conduct: (1) driving a person to distraction by repeatedly dialing his number, and (2) tieing up business lines by repeated calls.’ ” (People v Liberato, 180 Misc 2d 199, 201 [1999], quoting Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.30, at 253.) Although messages left on an answering machine are sufficient to satisfy the statutory requirement that a “communication” occur for a violation of subdivision (1), there is no evidence of any messages left on the machine. (People v Shropshire, 181 Misc 2d 77 [1999], citing People v Miguez, 147 Misc 2d 482 [1990].) In People v Portnoy (158 Misc 2d 60, 63 [1993]), the court dismissed the information as facially insufficient because, as in this case, “there are no factual allegations that the defendant said anything to the victim during the four telephone calls. To find a violation of subdivision (1) there must be some form of communication. In the absence of any communication, the defendant’s actions do not constitute aggravated harassment under subdivision (1) of the statute.”
However, the facial sufficiency standard enumerated in Price and Miguez (supra) is not met in this case. In Price, defendant is specific in time and place of threatened harm. Defendant is specific in the ultimatum that will result in the threatened harm. Also, the short duration — a matter of days— between the communication of the threat and the threatened harm creates a genuine urgency of expectancy. In short, defendant’s threat is clear, unambiguous, and immediate. Here, no such specificity of threat or clarity of intent or exigent circumstance exists.
In this case, defendant made four disjointed, dysfunctional calls over a period of 17 months. In March of 1998 defendant makes one phone call: defendant’s words, in context, are not clear as to what she means by them; no specific threat is made. One month later, in April of 1998, defendant makes one phone call: no specific threat is made. Three months later, in July of 1998, defendant makes yet another call: no specific threat is made. Finally, one year later, in July of 1999, defendant places *887 22 calls in one night. The complaint does not state that any message was left in any of these calls: annoying yes, but no specific threat was made.
Furthermore, the complaint does not allege that there was any communication in the 22 telephone calls made by defendant in July 1999. The instrument merely alleges that “defendant called deponent at deponent’s home at least 22 times.” In the instant case, subdivision (2) would have been more applicable to the volume of calls over a 12-hour duration. However, the People chose to charge subdivision (1). As a result, the allegations are not facially sufficient to charge the defendant.
B. Penal Law § 240.26 (1)
Penal Law § 240.26 (1) provides:
“A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
“1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.”
A time-tested Court of Appeals case, People v Todaro, is instructive as to the facial sufficiency standard to establish a violation of this section of the Penal Law. (See, People v Todaro, 26 NY2d 325 [1970]). In Todaro, defendant was charged with telling a police officer, after being placed under arrest, that “ ‘I’ll get you for this.’ ” (People v Todaro, 26 NY2d, at 327.) The Court held that mere words uttered in anger and annoyance are not enough to be considered harassment under the statute, and that more is necessary to confirm the defendant’s criminal nature of the charged act. {See, supra.) Likewise, in the instant case, words uttered in anger or annoyance by a spurned lover are not enough to be considered harassment under the statute.
Indeed, incessant telephone calls from a former lover — the conduct allegedly constituting the violation of section 240.26 (1) here — is “abusive” in the ordinary sense of that word. And, if the sheer number of calls and messages sufficed to constitute a violation of this section of the statute, the information would be facially sufficient to establish a violation of the statute. But the statute requires more: the defendant’s conduct must manifest an intent to harass, annoy or alarm another person; the defendant must strike, shove, kick or otherwise subject such other person to physical contact, or attempt or threaten to do the same.
Here, the number and substance of defendant’s telephone *888 calls simply do not suggest violence-provoking or substantial injury-inflicting utterances. This court finds that the statements in defendant’s telephone calls do not rise to the level of such “fighting words.” Additionally, volume of telephone calls alone does not constitute a violation of this statute.
The one factual allegation in the complaint to give this court pause is defendant’s March 1998 telephone call. However, on careful analysis, this court concludes that defendant’s March 1998 veiled statement does not constitute a violation of this statute because it does not explicitly threaten physical harm: “ ‘if i don’t get the money you make tomorrow, i’ ‘l [sic] GO TO THE NEXT STEP. I HAVE SO MANY IRONS IN THE FIRE, YOU DON’T KNOW WHAT THE FUCK IS GOING ON! YOU’LL BE VULNERABLE. WE’LL GET YOU DAVID, WE’LL GET YOU'.’ ”
Here, at worst, defendant’s comments manifest a crude, sophomoric and disjointed diatribe. At best, “ ‘we’ll get you’ ” proffers an implied threat. However, defendant’s complete statement, in context, does not convey the threat is of physical harm. Quite simply, the statement is too ambiguous to establish a violation of Penal Law § 240.26 (1). Defendant’s words are not clear as to what she meant by them.
People v Rissman is instructive in this regard. (See, People v Rissman, NYLJ, Nov. 5, 1998, at 23, col 1 [Crim Ct, NY County]; see also, New York State Constitutional Decisions: 1998 Compilation, Freedom of Expression: People v. Rissman, 15 Touro L Rev 1263 [spring 1999].) In Rissman, the defendant and the complainant were involved in a political struggle for the leadership of the Tenant’s Association. (Supra.) The complainant’s faction allegedly posted leaflets in the building. The Jewish defendant allegedly put swastikas and stickers on the leaflets (referring to the complainant and members of the complainant’s faction) stating: “ ‘duke, debbie & karl = hitler, EVA BROWN & HITLER JUNIOR? = NEO NAZIS? . . . KARL TERRORIZES GAYS AND ANTI-GAY SWEAR WORDS.’ ” (Supra, at 21, Col 1.) Thereafter, defendant allegedly accosted the non-Jewish complainant in the building elevator stating: “ ‘you should be ASHAMED OF YOURSELF FOR WORSHIPPING [sic] DUKE, YOU KNOW WHAT. HAPPENED TO HIM WILL HAPPEN TO YOU YOU JEWISH mother f.....r.’” (Supra, at 23, col 1.) The Rissman court held that the defendant’s statements were too ambiguous to actually become an existent threat. (Supra.) The defendant’s words were unclear: the defendant did not say what would happen to the complainant, nor the time and place that it *889 would, happen. (Supra.) Therefore, there was no immediate threat of severe harm, and the defendant’s statements did not constitute harassment within the meaning of the penal statute. (Supra.)
Likewise, in the instant case, what is meant by “ ‘we’ll get you’ ” is too vague to pose an immediate threat of physical harm to constitute harassment within the meaning of the penal statute.
Conclusion
For the foregoing reasons, the court grants defendant’s motion to dismiss the accusatory instrument in its entirety.