OPINION OF THE COURT
Per Curiam.
Judgment of conviction rendered September 11, 2000 reversed, on the law, the facts and as a matter of discretion in the interest of justice, and the accusatory instrument is dismissed.
Defendant was convicted, after a nonjury trial, of witness tampering in the fourth degree (Penal Law § 215.10) and aggravated harassment in the second degree (Penal Law § 240.30 [1]), in connection with a single telephone call that he made to the complainant, an attorney and long-time acquaintance. The defendant’s telephone call, made on February 16, 1998 and tape-recorded by the complainant, was prompted by the complainant’s then recent action in reporting to police a series of incidents involving one Polansky, a former girlfriend of both disputants, in which Polansky allegedly made “phony,” “loveydovey” telephone calls to the complainant. The audiotape of the telephone conversation initiated by defendant, which spans just over one minute in duration, reveals that defendant told the complainant that he (defendant) had “two letters written to the grievance committee that [the complainant] used the legal system to harass people” and that defendant “can have [the complainant] arrested” based on “two witnesses that said that [the complainant] assaulted [defendant] in Southampton”; that *64 defendant stated several times that he did not “want to go this way,” and indicated that he was calling as a “courtesy” to try to “work something out”; and that defendant once referred to the complainant dropping the inchoate criminal charges against Polansky (“[I]f you could drop the charges, I don’t have to do that”).
Even viewing the evidence in the light most favorable to the prosecution, the defendant’s initiation of the single telephone call involved here does not constitute fourth degree witness tampering under Penal Law § 215.10. The statute, insofar as relevant, reads as follows: “A person is guilty of tampering with a witness when, knowing that a person is or is about to be called as a witness in an action or proceeding, (a) he wrongfully induces or attempts to induce such person to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at, such action or proceeding.” (Emphasis added.) As the highlighted portion of the statutory text clearly reflects, Penal Law § 215.10 was intended to proscribe the wrongful interference with or intimidation of a person who is about to or has given testimony in a pending action or criminal proceeding (see Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 215.10, at 399; see, by contrast, Penal Law § 215.40 [which makes it unlawful to tamper with physical evidence when it is used or to be used “in an official proceeding or a prospective official proceeding”], § 215.15 [which criminalizes the intimidation of a victim or witness when the actor knows that the victim or witness “possesses information relating to a criminal transaction”]).
So far as is shown in the record now before us, the defendant’s February 16, 1998 telephone call to the complainant was made prior to the commencement of the underlying criminal proceeding initiated against Polansky at the behest of the complainant, viz., on the same day that Polansky was served with an appearance ticket and before the filing of a formal accusatory instrument or Polansky’s arraignment thereon (see, CPL 100.10; People v Weinberg, 34 NY2d 429, 431 [1974]; see also, People v Parris, 79 NY2d 69 [1992]). Notable in this regard is the trial assistant’s record statement during cross-examination of the defendant that at the time defendant telephoned the complainant, Polansky merely had been “issued a ‘summons’ and [had] not [been] put through the system at 100 Centre Street,” and the prosecution’s acknowledgment in its papers opposing defendant’s CPL 330.30 motion below that at the time of the *65 telephone call “defendant knew a proceeding was about to be instituted against . . . Polansky.” (Emphasis added.) Given this chronology, the People failed to prove beyond a reasonable doubt that the complainant was either a witness in a criminal proceeding or was about to be called as a witness and, thus, failed to establish that the defendant’s conduct constituted tampering with a witness under the statute as written (see, People v Delgado, 143 AD2d 1033 [1988], lv denied 73 NY2d 854 [1988]; People v Hollenquest, 173 AD2d 560 [1991]; People v Hasan, 185 Misc 2d 301 [2000]). That the witness tampering provisions of Penal Law § 215.10 do not encompass the situation here presented is not only made clear by the plain wording of the statute, but is confirmed as well by the legislative history of the subsequently enacted witness intimidation provisions of Penal Law § 215.15, quoted in People v Delgado (supra, 143 AD2d at 1034-1035):
“Victims are frequently the most valuable asset in prosecution efforts but are not offered assistance under witness protection statutes, including New York State’s tampering statute, because they have not been subpoenaed or have not, at the time of intimidation, acquired witness status in the criminal justice process. Immediately after a crime has been committed is very often the most critical time for intimidation efforts to take place and to be effective. Under the proposed bill, the act of threatening someone not to report their victimization is proscribed and would discourage intimidation during this important period of time” (mem of Paul S. Hudson, Counsel to Crime Victims Bd, to Gerald Grotty, Counsel to Governor, re: 1985 Legis Proposal No. 27, at 13, Bill Jacket, L 1985, ch 667, § 2).
Also infirm is defendant’s conviction of aggravated harassment in the second degree, which was not based on legally sufficient evidence and was, in any event, against the weight of the evidence. The audiotape of the single telephone call underlying defendant’s aggravated harassment conviction establishes beyond cavil that defendant’s exchange with the complainant was spoken in measured tone and was neither denigrating nor abusive in content. At no time during the brief, “courtesy” telephone call — the avowed purpose of which was to “work something out” between former “friends” — did defendant unequivocally threaten the complainant or resort to invective. Defendant’s words, on their face, did no more than haltingly raise the possibility that defendant might pursue available legal *66 channels to address the complainant’s alleged prior misconduct in the event the complainant chose not to “drop the charges” against Polansky, a mutually known third person. Further, it is not unfair to say — and we do not “distort! ] the record” (dissenting op at 69) in saying — that the telephone call now complained of was directed not to an unwilling recipient, but to one who seemingly was all too eager to draw out the conversation in what now appears to have been a studied effort to ensnare the defendant into a trap by capturing the call on a tape recorder surreptitiously used.
In determining whether defendant violated the telephone harassment statute, our task is not to decide whether defendant acted inappropriately in calling the complainant in the emotionally charged circumstances then prevailing or to pass judgment on whether defendant’s statements were indecorous or indiscreet. Rather, the core- issue before us is whether defendant’s isolated telephone call was shown beyond a reasonable doubt to have been actuated by the requisite criminal intent — viz., to “harass, annoy, threaten or alarm” — or to have been initiated in a “manner likely to cause annoyance or alarm” (Penal Law § 240.30 [1]). Based upon a careful review of the record, including irrefutable physical evidence in the form of the tape recording itself, faithful adherence to the review standards governing this appeal (see, People v Bleakley, 69 NY2d 490 [1987]), and proper application of relevant precedent (see, People v Mangano, 100 NY2d 569 [2003]; People v Taylor, 2002 NY Slip Op 50023[U] [App Term, 1st Dept, Jan. 22, 2002]; People v Livio, 187 Misc 2d 302 [2000]), we answer that question in the negative and hold that defendant’s single telephone call did not rise to the level of aggravated harassment within the meaning of Penal Law § 240.30 (1).*

 Tried upon an information containing several counts of second degree aggravated harassment based upon allegations, inter alia, that he twice telephoned the complainant on February 16, 1998, defendant ultimately was convicted of the count relating to his initial, tape recorded telephone call and acquitted on the count relating to a subsequent, unrecorded telephone call purportedly made minutes later. In this posture, and “because a trial followed by acquittal is but an accusation successfully met” (People v Cascone, 185 NY 317, 334 [1906]), we find neither record nor legal support for the dissenter’s stated view that defendant’s harassing intent was established by “two telephone conversations accompanied by threats” (dissenting op at 69).