OPINION OF THE COURT
Gerald Harris, J.
*387 The complaint alleges that the defendant, Derick Bonitto, while incarcerated in a Queens jail, wrote two letters to a person unknown to him, whose name and address he apparently obtained at random from a telephone directory. The complaint further alleges that defendant, when questioned, admitted that he sent the two letters in the hope that he “may get lucky” and get a visit, a telephone call or a written reply.
The defendant has been charged with two counts of aggravated harassment in the second degree (Penal Law § 240.30 [1]) and one count of harassment in the second degree (Penal Law § 240.26 [1]). It is not charged that defendant’s letters were sent without any legitimate purpose. He moves to dismiss the complaint as facially insufficient, pursuant to Criminal Procedure Law §§ 100.40 and 170.30. The motion also seeks to suppress his statements or, alternatively, for a Dunaway/Huntley hearing.
It is the defendant’s contention that the letters are nonthreatening, were not intended to harass, threaten or annoy and are protected by the First Amendment.
The People argue that the letters “show the defendant had the intent to ‘threaten’ the victim,” because they come from a prison, show a cell block address number as a return address and are addressed to a person unknown to the defendant. Furthermore, the People would infer a threat from the fact that the letters show knowledge of the complainant’s telephone number and, in one letter, defendant informs the complainant that he will continue to write to get her attention and, failing that, will “go to plan B,” followed by the advice that, if complainant does not write back, “I’m going to have to call you.”
More than three months after the second letter, which followed approximately one month after the first, a complaint was drawn and an arrest warrant issued on February 26, 2004. Upon arraignment, on March 2, 2004, an order of protection was entered and served upon the defendant. There is no allegation of any further communication by the defendant to the complainant since the date of the second letter, November 20, 2003.
The relevant part of Penal Law § 240.30 (1) provides:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he . . .
“1. . . . (a) communicates with a person . . . by . . . mail . . . in a manner likely to cause annoyance or alarm . . . .”
*388 In ruling upon this motion, the court must determine whether the complaint adequately alleges conduct which falls within the category of behavior a state may constitutionally criminalize or whether, on the face of the pleading, the actions attributed to the defendant constitute protected free speech. In making this determination, the court is mindful that, on a motion to dismiss for facial insufficiency, it must employ a standard less strict than would be required at trial. Nevertheless, the court must determine whether the complaint sets forth allegations that establish, if true, every element of the offenses charged and the defendant’s commission thereof. (CPL 100.40 [1] [c]; 100.15 [3]; People v Alejandro, 70 NY2d 133 [1987].)
The Court of Appeals, in upholding the constitutionality of Penal Law § 240.30 (2), wrote that a person’s right to free expression may be curtailed “ ‘upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner’ ” (People v Shack, 86 NY2d 529, 535-536 [1995], quoting Cohen v California, 403 US 15, 21 [1971]). Shack involved multiple telephone calls placed to the complainant’s home. The Court said that the statute was not unconstitutional as applied because it did not subject the defendant to criminal liability for engaging in protected speech; his liability arose from his harassing conduct, not from any expression entitled to constitutional protection (id. at 536; see, also People v Mangano, 100 NY2d 569 [2003]).
Furthermore, “fighting words” — words that are likely to provoke a violent reaction when heard by an ordinary citizen— and “true threats” may be proscribed without offending the First Amendment. (See, Cohen v California, 403 US 15, 20 [1971] [fighting words]; Watts v United States, 394 US 705, 708 [1969] [true threats]; Vives v City of New York, 305 F Supp 2d 289 [SD NY 2003] [declaring Penal Law § 240.30 (1) unconstitutional to the extent it prohibits nonthreatening communications intended to annoy or alarm].)
The issue thus becomes whether the complaint adequately alleges facts which constitute harassing conduct or true threats, as argued for by the People.
“ ‘True threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.” (Virginia v Black, 538 US 343, 359 [2003], citing Watts, 394 US at 708; Vives v City of New York, supra.)
*389 It must be shown that, under the circumstances, “an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury,” whether or not the defendant subjectively intended the communication to convey a true threat. (United States v Francis, 164 F3d 120, 123 [2d Cir 1999].) Whether the threat meets this standard usually is a question of fact for the jury (id.). However, where, as here, the language is incapable of constituting a true threat, as a matter of law, the complaint should be dismissed. (See, Watts v United States, 394 US 705 [1969].)
The court finds, as a matter of law, that the allegations in the complaint constitute neither harassment as described in Shack nor threats within the meaning of Watts. The defendant is not accused of sending a multitude of letters to the complainant; he is charged with sending two letters approximately one month apart. Furthermore, having received no response, defendant’s attempt at communication appears to have ceased, since no further contact is alleged between November 20, 2003 and the date of defendant’s arraignment on March 2, 2004.
The substance of each letter is set forth in the complaint. The first letter, received by the complainant on October 22, 2003, apologizes for the invasion of privacy and is, essentially, a request for permission to call.
The second letter, received on November 20, 2003, references complainant’s lack of response and continues:
“I’d figure that I should write again and will continue to do so to get your attention and if that don’t work then I’ll go to Plan B . . . Listen I don’t really understand why it seems like a crime to gain some type of communication with you. Ps.s. Your phone No. is (omitted) right? Well, if you’re not going to write me back, then I’m going to have to call you.”
The complaint alleges that the return address included defendant’s name and cell number, that complainant does not know the defendant and that complainant felt threatened and alarmed by each letter.
While receipt of mail from an inmate unknown to complainant may well have been unsettling, the court concludes that the content of the letters, even within that context, does not constitute a serious expression of an intent to commit an act of unlawful violence and could not reasonably be so interpreted. The statement that defendant will continue to write is not the equiv *390 alent of a true threat. The reference to “Plan B” is, at most, vague and ambiguous and seems to be explained by the final sentence of the letter, which advises that the defendant, in the absence of a response, will call the complainant.
If the defendant had followed through and continued to write the complainant, or initiated a series of unwelcome telephone calls, it is conceivable that his conduct could constitute unlawful harassment within the meaning of People v Shack (supra) (i.e., an intolerable invasion of privacy). Certainly, had defendant persisted in sending letters, in the face of advice that his correspondence was unwelcome and caused alarm to the recipient, a different result on this motion might be warranted, and, indeed, a different statute might have been violated. (See, Penal Law § 120.45 [2].) Furthermore, such advice, if communicated by appropriate authority, likely would end unwanted communication without the need for criminal prosecution.
However, based upon the allegations in the complaint, the court cannot conclude that the two letters written by the defendant “fall within any of the proscribable classes of speech or conduct.” (People v Mangano, 100 NY2d 569, 571 [2003].) Rather, they constitute protected speech. Accordingly, defendant’s motion to dismiss the two counts charging violations of Penal Law § 240.30 (1) is granted.
Nor does the complaint set forth any facts upon which a violation of Penal Law § 240.26 (1) may be premised, since no physical contact is alleged to have been attempted or threatened. That charge, too, must be dismissed.
The other branches of defendant’s motion are rendered moot.