OPINION OF THE COURT
Kenneth L. Gartner, J.
*789 The defendant is charged with aggravated harassment in the second degree, in violation of Penal Law § 240.30 (1), a class A misdemeanor criminal offense. The motion by the defendant to dismiss requires this court to assess the implications of two recent conflicting decisions. A decision of the United States District Court for the Southern District of New York declared that section 240.30 (1) constitutes an unconstitutional infringement of the First Amendment right to free speech (and, possibly, the Fourteenth Amendment right to due process of law). A decision of the Appellate Term, Second Department, in contrast, holds that the provision withstands scrutiny on both these grounds.
The federal decision appears to be unsupported by either the New York Court of Appeals or the Second Circuit Court of Appeals. It cannot be followed.
Section 240.30 (1) of the Penal Law provides, in relevant part, that a person is guilty of a class A misdemeanor, punishable by up to a year in jail, “when, with intent to harass, annoy, threaten or alarm another person,” they, inter alia, “communicate[ ] with a person ... by telephone, or . . . mail... in a manner likely to cause annoyance or alarm.”
The instant complainant’s husband had allegedly made harassing telephone calls to the defendant’s wife. The defendant allegedly called the complaining witness and left a message on her cell phone telling the complainant that if the complainant’s husband did not stop calling the defendant’s wife, the defendant would “bury her,” and that she had “been warned.”
In Vives v City of New York (305 F Supp 2d 289 [SD NY 2003]), the plaintiff, who had on one occasion been charged with, although never ultimately prosecuted for, a violation of Penal Law § 240.30 (1), based upon his mailing of certain materials, argued that the statute was unconstitutional, as violating the First and Fourteenth Amendments of the United States Constitution, on the ground that the statute, respectively, unlawfully abridged freedom of speech, and gave insufficient notice of what conduct was proscribed.
After observing that the First Amendment allows regulation of only certain very limited categories of speech (305 F Supp 2d at 298), Vives held (305 F Supp 2d at 299-300) that “Vives’s communications do not fall into one of the defined categories of unprotected speech such as defamation, incitement, obscenity, or child pornography. Nor do they constitute unprotected ‘true threats,’ because they are not ‘serious expression[s] of an intent *790 to commit an act of unlawful violence to a particular individual or group of individuals’.” (Citations omitted.)
Vives concluded (305 F Supp 2d at 301) that “[t]hough section 240.30(1) has never before been declared unconstitutional on its face, its fate has been foreshadowed since 1985 . . . [Section 240.30(1) cannot be reconciled with the First Amendment. Section 240.30(1) is therefore unconstitutional to the extent it prohibits communications, made with the intent to annoy or alarm . . . .” While finding that it was beyond the court’s power to enjoin the police from enforcing the statute against nonparties, Vives did enjoin its enforcement against the plaintiff, and found the arresting officers potentially subject to personal liability in damages because prior court rulings “indicated that a declaration of unconstitutionality was inevitable” (305 F Supp 2d at 303). Vives warned that in view of “the ever-growing number of courts holding this statute unconstitutional,] . . . the state and local police officers and prosecutors would be well-advised ... to cease arrests and prosecutions under this section.” (305 F Supp 2d at 304.)
Just a few months before Vives, the New York Court of Appeals issued an opinion setting forth the analytic procedure to be followed in determining facial challenges to statutes. In People v Stuart (100 NY2d 412 [2003]), the Court sustained the defendant’s conviction of a misdemeanor under Penal Law § 120.45, part of New York’s antistalking statute.
Under classical analysis, “[t]he overbreadth and vagueness doctrines give an individual, to whom a law is constitutionally applied, standing to argue that it is unconstitutional on its face — meaning that, as written, the law could be applied unconstitutionally in other situations.” (See, D.H. Kaye, The Propriety of “Facial Challenges” to Prior Restraints on the Use of the Internet for Scientific Speech, 40 Jurimetrics J 445, 452 n 29 [2000].) “In a facial challenge to the overbreadth and vagueness of a law, a court’s first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.” (City of Houston, Tex. v Hill, 482 US 451, 458 [1987] [citation omitted].) This is the analysis which Chief Judge Kaye, concurring, would have continued to apply in Stuart. (See, Stuart, 100 NY2d at 422 n 8.)
The Court in Stuart, however, sharply distinguished between facial challenges for vagueness, and facial challenges for overbreadth.
The Court in Stuart first noted that facial challenges for overbreadth are unique and exclusive to situations in which *791 conduct arguably protected by the First Amendment is implicated (id.), in which case Judge Kaye’s analysis would prevail, but which in Stuart was not the case.
The Court in Stuart then held that a facial challenge for vagueness, as opposed to overbreadth, “requires the court to examine the words of the statute on a cold page and without reference to the defendant’s conduct,” determine whether the defendant has carried the “heavy burden” of “showing that the statute is impermissibly vague in all of its applications,” i.e., is “invalid in toto — and therefore incapable of any valid application.” (100 NY2d at 421.) Consequently, “a court’s task when presented with both a facial and as-applied argument is first to decide whether the assailed statute is impermissibly vague as applied to the defendant,” since “in rejecting the as-applied challenge, the court will have necessarily concluded that there is at least one person — the defendant — to whom the statute may be applied constitutionally,” making it “impossible for a defendant to establish the statute’s unconstitutionality in all of its applications,” as required for a facial vagueness challenge to succeed. (100 NY2d at 422-423.)
Vives relied in large part on People v Dupont (107 AD2d 247 [1st Dept 1985]). The propriety of relying on Dupont for this purpose, though, was called into question by the United States Court of Appeals for the Second Circuit, when vacating the other decision primarily relied upon by Vives (Schlagler v Phillips, 985 F Supp 419 [SD NY 1997], vacated 166 F3d 439 [2d Cir 1999]).
In Schlagler, the District Court had issued an injunction purporting to bar the Orange County District Attorney from prosecuting the plaintiff — a “skinhead” who had placed intentionally inflammatory stickers not only inside a café, but on a patron — for violating Penal Law § 240.30 (1). Schlagler found section 240.30 (1) unconstitutionally vague and over-broad. Vives cites the Schlagler District Court decision simply as having been reversed “on other grounds.” In vacating and directing the District Court to abstain from interfering with the District Attorney’s prosecution, the Second Circuit in fact held that the statute’s unconstitutionality was not so clear (166 F3d at 443):
“Here, in concluding that § 240.30(1) is unconstitutional, and hence that this prosecution was brought in bad faith, the district court relied extensively on [Dupont] . . .
*792 “As an initial matter, in Dupont the court found the acts complained of did not fall within section 240.30(1) but nevertheless that the statute was unconstitutional on its face. While it may have purported to declare the statute facially invalid, it is not entirely clear that it did so and in any event does not render invalid all prosecutions under the statute. To the contrary, Dupont itself acknowledged that other courts have found the statute constitutional. Moreover, there have been a number of successful prosecutions under the law since Dupont.” (Citations omitted; accord, People v Kochanowski, 186 Misc 2d 441 [App Term, 2d Dept 2000], lv denied 95 NY2d 965 [2000] [affirming Penal Law § 240.30 (1) conviction and distinguishing Dupont].)
Vives also noted (305 F Supp 2d at 302 n 8) that the New York Court of Appeals, in People v Dietze (75 NY2d 47 [1989]), struck down former section 240.25 (2) of the Penal Law. In fact, while much of the analysis in Dietze was indeed addressed to statutory language similar to that utilized in section 240.30 (1), the Court utilized a far different analysis when addressing section 240.30 (2), six years after Dietze, in People v Shack (86 NY2d 529 [1995]), a case upon which the Court later relied heavily in Stuart (see, 100 NY2d at 427-428, supra; see, People v Tiffany, 186 Misc 2d 917 [Crim Ct, NY County 2001, Harris, J.] [distinguishing Dietze and Shack]).
Penal Law § 240.30 (2) criminalizes calls made “with no purpose of legitimate communication.” In Shack, the defendant had been convicted of violating section 240.30 (2) as a result of having left numerous messages on the complaining witness’ voice mail stating that “if she refused to speak with him, he would sell her telephone number to a ‘pervert’ who would delight in calling and upsetting her, that he would place dozens of phone calls to other family members and that he would call the Michigan licensing board to have her psychologist’s license revoked.” (86 NY2d at 534.)
The Court of Appeals found that the statute was not facially invalid for either overbreadth or vagueness.
Rejecting the overbreadth argument, the Court concluded that “[e]ven if the statute may, on rare occasion, reach constitutionally protected expression, we are unable to conclude that the statute’s overbreadth, if any, is substantial . . . .” (86 NY2d at 537.)
*793 Regarding the argument that the calls in Shack did not fall within one of the categories of speech which Vives would later identify as the exclusive areas of permissible regulation under the First Amendment, the Court in Shack held (86 NY2d at 535-536) that the particular method of communication used— something not addressed in Vives — raised counterveiling privacy considerations:
“[A] person’s right to free expression may be curtailed ‘upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner’. An individual’s right to communicate must be balanced against the recipient’s right ‘to be let alone’ in places in which the latter possesses a right of privacy, or places where it is impractical for an unwilling listener to avoid exposure to the objectionable communication. Under some circumstances, the privacy right may ‘plainly outweigh’ the free speech rights of an intruder . . . [Permitting communications to be foisted upon an unwilling recipient in a private place would be tantamount to licensing a form of trespass . . .
“Manifestly, an individual has a substantial privacy interest in his or her telephone . . . Thus, to the extent Penal Law § 240.30 (2) limits a caller’s right to free speech, it permissibly subordinates that right to the recipient’s right to be free of unwanted telephone calls. The statute is narrowly drafted and furthers the State’s compelling interest in protecting its citizens from ‘persons who employ the telephone, not to communicate, but for other unjustifiable motives’.” (Citations omitted.)
Rejecting the vagueness argument, the Court in Shack first observed that “[t]he legislative use of inherently imprecise language . . . does not render a statute fatally vague if that language ‘conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices’.” (86 NY2d at 538 [citations omitted].) The Court in Shack, addressing language which is part of section 240.30 (1), as well as section 240.30 (2), held (86 NY2d at 539):
“Specifically, the statute prohibits one from [communicating] ‘with intent to harass, annoy, threaten or alarm another person’ (Penal Law § 240.30). By including a specific intent element in the statute, the Legislature has removed the possibility that a *794 defendant could be unaware of his criminal conduct . . . We conclude that the statute adequately describes an element of the proscribed conduct, and provides sufficient notice to potential offenders and sufficient guidelines to those who would enforce the statute and that defendant has failed to overcome the presumption of validity which attaches to legislative enactments.” (Citations omitted.)
Just four months prior to the decision in Vives, in People v Goldstein (196 Misc 2d 741 [App Term, 2d Dept 2003]), the Appellate Term expressly held that “[defendant’s contention that the aggravated harassment statute (Penal Law § 240.30 [1], [2]) is unconstitutional because defendant was within his First Amendment rights in making various statements is without merit.” (196 Misc 2d at 745; accord People v Bonitto, 4 Misc 3d 386 [Crim Ct, NY County 2004, Harris, J.].) The Appellate Term in Goldstein referred to the criminalized conduct (as had the Court of Appeals in Shack), as a “form of trespass,” due to the manner of communication selected by the defendant (i.e., telephone or mail), and noted the “substantial privacy interests” of the complainant. (196 Misc 2d at 747.)
Particularly since the Appellate Term is the court with direct appellate jurisdiction over this one, and therefore the court whose decisions this court is bound to follow, the issue of the constitutionality of Penal Law § 240.30 (1) must therefore be decided in the affirmative, and the law applied as enacted by the Legislature, notwithstanding the declaration contained in Vives.
The defendant argues that the communication in this case was in essence only a demand by the defendant that the complainant have her husband cease his harassment, with a contingent action to be taken if the request was ignored. Moreover, argues the defendant, the communication, even if categorized as a threat, was not what Vives would define as a “true threat,” i.e., one of “unlawful violence.” The stated contingent action — that the defendant would “bury” the complainant — is at best ambiguous, evincing nothing more than an intent to “defeat overwhelmingly.” Even if not within the ambit of constitutionally protected speech, as Vives would hold it was, the communication was, according to the defendant, not within the scope of speech criminalized by the statute.
In Goldstein (supra, 196 Misc 2d 741 [2003]), the defendant — as part of a sustained campaign of harassment — made a *795 telephoned threat to “take down” the complainant, which threat could be analogized to the instant threat to “bury” the complainant. The statement in Goldstein (at 746) was made in a context in which it was apparent that what was meant was to “take [her] down” socially, financially, and professionally, although not physically and through violence. The threat was adjudged by the Appellate Term as nevertheless sufficient to sustain a conviction after trial under section 240.30 (1).
However, in People v Silverberg (1 Misc 3d 62 [App Term, 1st Dept 2003]), the Appellate Term reversed the defendant’s conviction for harassment under section 240.30 (1). The complainant was a lawyer who had initiated criminal harassment charges against a mutual acquaintance of the complainant and defendant. The defendant called up the complainant and informed the complainant that if he didn’t drop the charges, the defendant would with the support of two eyewitnesses bring criminal charges against the complainant for an assault which he had previously perpetrated, and would also file professional grievances against him.
The Appellate Term held that the conviction could not stand in view of the fact that the charge arose from a single, “isolated,” phone call, that the defendant during the call “spoke in a measured tone,” and that the defendant did not “unequivocally” threaten the complainant. (1 Misc 3d at 65.) Justice Suarez dissented, among other things objecting to the apparent imposition of an “unequivocality” requirement.
In People v Mangano (100 NY2d 569 [2003]), the defendant called an after-hours telephone answering machine maintained by the Village of Ossining, and “rained invective on two village employees, wished them and their families ill health, and complained of their job performance.” (100 NY2d at 570.) The Court of Appeals reversed her conviction for violating section 240.30 (1), stating “defendant’s messages were crude and offensive but made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public. We cannot agree with the People’s argument that appellant’s messages fall within any of the proscribable classes of speech or conduct.” (100 NY2d at 571.)
In Dietze (75 NY2d 47, supra), the Court reversed the defendant’s conviction, holding that
“[t]here is nothing in the record demonstrating that defendant’s statement that she would ‘beat the crap *796 out of [the complainant and her son] some day or night in the street’ was either serious, should reasonably have been taken to be serious, or was confirmed by other words or acts showing that it was anything more than a crude outburst. While genuine threats of physical harm fall within the scope of the statute, such an outburst, without more, does not.” (75 NY2d at 53-54 [citations omitted].)
The action of the instant defendant arguably falls within the Dietze-Mangano-Silverberg ambit — i.e., not criminal within the statutory definition because it was an isolated, angry outburst (as in Silverberg, and in contrast to Goldstein), not reasonably to be taken seriously as a threat (as in Dietze), not an “unequivocal” one, since conditional (as in Silverberg), and, since made to voice mail rather than personally, less invasive of any “privacy” interests of the complainant (as in Mangano) (see, Silverberg at 72 [Suarez, J., dissenting in part]).
However, whether this is in fact the case must abide a trial, with a full record. Whether an alleged “threat” meets the applicable constitutional or statutory standards is “usually ... a question of fact,” and on a motion to dismiss for facial insufficiency, the court must hold the People to a less strict standard than would be the case at trial. (See, Bonitto, supra, 4 Misc 3d at 389; Tiffany, supra, 186 Misc 2d at 920-921.)
The defendant’s motion to dismiss must therefore be, and hereby is, denied.