OPINION OF THE COURT
Michael Gerstein, J.
The question in this case is whether an 18-year-old defendant who, perhaps inartfully, expresses his love for the 14-year-old complainant — in person and through the social networking Web site MySpace — can be charged with aggravated harassment when his love goes unrequited. We hold that unrequited teenage love is not a crime, and is not elevated to a crime by the disapproval, and even annoyance, of the object of the erstwhile lover’s ■ affections, or by that of her father.
Legal and Factual Background
In order to be sufficient on its face, an accusatory instrument must allege facts sufficient to provide reasonable cause to believe that the defendant committed the offenses charged. (CPL 100.40 [4] [b]; People v Dumas, 68 NY2d 729 [1986].)
The superseding information alleges two separate incidents, the first of which allegedly occurred between 4:00 a.m. on August 29, 2007 and 4:00 a.m. on August 30, 2007. The complaint alleges that, on that date, defendant sent the complainant an unspecified number of messages through the MySpace Web site, and that these messages stated, in substance, “I love you,” “we need to be together,” “I will see you every day,” and “I will never stop trying to talk to you.” The complaint further alleges that complainant A.F. knew that these messages came from the defendant because she recognized his picture and his MySpace messaging name, “Looking4therightoneinmylife,” both of which appeared with the messages he sent. These messages allegedly caused the complainant to fear the defendant, and to become alarmed and annoyed. According to the superseding information, the defendant and complainant were then 18 and 14 years old, respectively.
Upon these first allegations, defendant is charged with two counts of aggravated harassment in the second degree (Penal *832 Law § 240.30 [1] [a], [b]) and with endangering the welfare of a child (Penal Law § 260.10). All three of these counts are class A misdemeanors.
The second incident described in the superseding complaint allegedly occurred on October 29, 2007 at the complainant’s home. The complaint alleges that defendant was repeatedly asked to leave complainant’s house by A.F.’s father, John F, and that he had to be physically removed from the property. The complaint further states that, on the same day, the defendant said to complainant A.F., in substance, “don’t listen to your parents,” “come away with me,” and “I want to take care of you” and that defendant told complainant A.’s father, “I won’t listen to you,” and “I’m not going to leave your daughter alone.” These statements allegedly alarmed and annoyed both father and daughter, and made A.F. afraid of defendant.
On this second set of allegations, defendant is charged with trespass (Penal Law § 140.05), a violation; criminal trespass in the third degree (Penal Law § 140.10 [a]), a class B misdemeanor; two counts of harassment in the second degree (Penal Law § 240.26 [1]), a violation; and endangering the welfare of a child (Penal Law § 260.10), a class A misdemeanor.
Defendant moves to dismiss the complaint for facial insufficiency pursuant to CPL 170.30 (1) (a) and 170.35 (1) (a)-(b), arguing that statements that could be construed as “love messages” cannot constitute aggravated harassment or endangering the welfare of a child. (Defendant’s mem at 6.) Defendant moves, in the alternative, to reserve his right to make further motions, pursuant to CPL 255.20 (3).
The People oppose defendant’s motion, arguing that the allegations set forth in the complaint amount to much more than “teenage angst,” and gave the complainant valid reason to be alarmed and annoyed. (People’s affirmation at 2.) In response to defendant’s remaining arguments, the People served and filed the superseding information described herein.
For the following reasons, we find the counts of aggravated harassment in the second degree (Penal Law § 240.30), harassment in the second degree (Penal Law § 240.26), and endangering the welfare of a child (Penal Law § 260.10) to be insufficiently alleged. We begin our discussion with the counts relating to the first incident: the messages allegedly sent by defendant through MySpace.
*833 The Complaint Insufficiently Alleges Aggravated Harassment in the Second Degree (Penal Law § 240.30)
A. The Legal Standard
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . .
“(a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm; or “(b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.” (Penal Law § 240.30 [1].)
Essential to both of these provisions is the element of intent, or the “conscious objective,” to threaten, harass, annoy or alarm. (Penal Law § 15.05 [1].) This intent must be established either from the alleged act itself, or from the defendant’s conduct and the surrounding circumstances. (People v Bracey, 41 NY2d 296 [1977].)
The First Amendment of the United States Constitution forbids the silencing of speech merely because it is objectionable or offensive to the listener. (Texas v Johnson, 491 US 397, 414 [1989].) Only “well-defined and narrowly limited classes . . . including] the lewd and obscene, the profane, the libelous, and the insulting or ‘fighting’ words . . . which by their very utterance inflict injury or tend to incite an immediate breach of the peace” may properly be proscribed. (Chaplinsky v New Hampshire, 315 US 568, 571-572 [1942].) As the Court of Appeals reiterated in People v Dietze (75 NY2d 47, 51 [1989]), speech alone may neither be forbidden nor penalized “unless [it] presents a clear and present danger of some serious substantive evil.” Because of the risk that a statute proscribing communication might infringe on constitutionally protected speech, Penal Law § 240.30 has been strictly construed to reach only conduct intended to threaten or harass, such as specific threats, and “intolerable” invasions of privacy. (People v Smith, 89 Misc 2d 789, 791 [App Term, 2d Dept 1977]; People v Dietze, supra [declaring the predecessor to Penal Law § 240.30, which did not require an intent to threaten, unconstitutional]; People v Limage, 19 Misc 3d 395 [Crim Ct, Kings County 2008].) Communica *834 tions that are merely unpleasant or disagreeable to their recipients are protected by the First Amendment and do not fall within the statute’s scope. (People v Mangano, 100 NY2d 569 [2003] [numerous crude and offensive remarks left on an answering machine set up to receive complaints did not constitute aggravated harassment; statute was unconstitutional as applied]; People v Yablov, 183 Misc 2d 880 [Crim Ct, NY County 2000] [complaint alleging that defendant left angry messages on her ex-boyfriend’s answering machine and called him 22 times in a period of 12 hours was insufficient to establish harassment or aggravated harassment where the defendant made no specific threat]; People v Cooper, 4 Misc 3d 788, 789 [Nassau Dist Ct 2004] [allegation that defendant called complainant and threatened to “bury her” was not a specific threat, and was thus insufficient to establish harassment].)
Thus, in order to sustain a count of aggravated harassment under Penal Law § 240.30, a complaint must allege a specific intent to cause alarm. (People v Malausky, 127 Misc 2d 84 [Rochester City Ct 1985]; People v Smith, supra.) Conduct that is merely “annoying” to a particular listener does not constitute harassment under the Penal Law. (People v Livio, 187 Misc 2d 302 [Nassau Dist Ct 2000] [telemarketer’s solicitation calls were not initiated with the intent to threaten or alarm, and therefore did not constitute harassment];[1] People v Yablov, supra.)
B. The Complaint Herein is Insufficient as a Matter of Law
The complaint does not allege that the messages allegedly sent by the defendant were intended to threaten, incite alarm, or harass. (Compare People v Silverberg, 1 Misc 3d 62 [App Term, 1st Dept 2003] [allegations that defendant called complainant and threatened to sue her did not rise to harassment absent evidence of defendant’s intent to threaten or alarm the complainant], with People v Tiffany, 186 Misc 2d 917, 919 [Crim Ct, NY County 2001] [allegation that defendant called complainant and threatened to “put a bullet” through the victim’s head was sufficient to establish an intent to annoy, threaten or alarm].) There is no evidence in the complaint that defendant intended anything other than to declare his love for the complainant.
*835 The words “we need to be together,” “I will never stop talking to you,” and “I love you” are not threats, but appear to be merely the symptoms of unrequited love — the same hopeless affection that, among countless others, Dante felt for Beatrice, Don Quixote for Dulcinea, Cyrano for Roxane, Quasimodo for Esmeralda, Young Werner for Lotte, Jay Gatsby for Daisy Buchanan, and that Charlie Brown felt for the Little Red Haired Girl. While these romances do not usually end well for the pursuing party, the People have cited neither statute nor case law that might punish the communication of unrequited love, even if such is undesired. (People v Franco, 15 Misc 3d 1136[A], 2007 NY Slip Op 51011[U], *2 [Crim Ct, NY County 2007] [in the absence of threats, the mere writing of love letters, even where the letters include crude and profane attempts at humor, and even where this love is unrequited, does not rise to aggravated harassment; “defendant’s ineptitude, and even offensiveness, as a suitor is insufficient to establish (harassment)”].)
Teenagers are especially vulnerable to the “madness most discreet”[2] that makes sad hours seem long. Mere pages before he met Juliet, Romeo pined for Rosaline; Adrian Mole longed for Pandora Braithwaite in volume after volume of his “secret diaries”[3]; and Dion implored of the skies up above, “why must I be a teenager in love?” — vowing, just a few verses later, that “if you should say goodbye, I’d still go on loving you.”[4] When teenagers fall in love, as song lyrics and studies show, they are more likely to exhibit almost manic behaviors, take risks, act compulsively,[5] **and sometimes pursue, with reckless abandon, the objects of their affection. While the actions of a love-struck teenager may well be foolish, reckless, or otherwise acts which might not be expected from a mature adult, they are not, without more, elevated to crimes.
The allegations in the complaint merely establish that defendant declared his feelings for the complainant. Conversely, the complaint is devoid of allegations that the defendant knew his declarations would be coldly received. The alleged messages *836 that form the basis of the charge of aggravated harassment were transmitted through MySpace, a social networking Web site that allows each user to choose which friends will be part of his or her network. When another MySpace user receives an invitation to be friends, he or she must choose whether or not to communicate with the requesting user. (People v Fernino, 19 Misc 3d 290 [Crim Ct, Richmond County 2008]; Wikipedia, MySpace defined.)[6] At any time, a MySpace user may remove friends from his or her network, or may block unwanted communications. (Id.) Thus, while it is reasonable to assume that, at some point, complainant added the defendant under his nom de plume “looking4therightoneinmylife” to her list of friends, the complaint contains no allegations that complainant attempted to quell defendant’s love by blocking defendant’s messages or by asking him to cease writing her.[7] We therefore find that the complaint fails to show that the defendant intended to alarm, threaten or annoy the complainant. Both counts of Penal Law § 240.30 are accordingly dismissed.
The Complaint Insufficiently Alleges Harassment in the Second Degree (Penal Law § 240.26)
The defendant is charged with two additional counts of harassment in the second degree (Penal Law § 240.26) related to the second alleged incident. In that portion of the complaint, the defendant is accused of telling complainant A. that she should not listen to her parents, that she should come with the defendant and that the defendant wanted to take care of her. The second count relates to the allegations that the defendant told John E, complainant A.’s father, that defendant would not listen to John E, and that defendant would never leave John E’s daughter alone. Neither of these incidents constitute harassment in the second degree.
Penal Law § 240.26 (1) requires allegations that “with intent to harass, annoy or alarm another person . . . [defen *837 dant] strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.” The statute requires allegations that the defendant (a) intended to harass, annoy or alarm (People v Concannon, 28 NY2d 854 [1971]), and (b) made a genuine threat of physical harm that was more than a mere “crude outburst.” (People v Dietze at 54.)
The complaint before us alleges no threat of physical contact, genuine or otherwise. While the defendant stated that he would not leave complainant A. alone, there is nothing in the complaint to indicate that the defendant intended this to be a threat, or anything more than a declaration of his affection for the complainant, even over the objections of her father. (People v Bracey, 41 NY2d 296 [1977] [intent to harass should be inferred from the act itself or from the defendant’s conduct and the surrounding circumstances].) Given the absence of allegations that the defendant intended to threaten harm, defendant’s motion to dismiss both counts of Penal Law § 240.26 (1) is granted. (See e.g. People v Dietze, supra; People v Yablov, supra.)
The Complaint Insufficiently Alleges Endangering the Welfare of a Child (Penal Law § 260.10)
Penal Law § 260.10 (1), endangering the welfare of a child, requires allegations that the defendant “knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.”
A complaint charging Penal Law § 260.10 must therefore allege that “the defendant act[ed] in a manner which is likely to result in harm to the child, knowing of the likelihood of such harm coming to the child.” (People v Simmons, 92 NY2d 829, 830 [1998].) Moreover, this harm cannot be merely speculative, it must be likely. (People v Cruz, 152 Misc 2d 436, 439 [Crim Ct, NY County 1991]; People v Cruz, 10 Misc 3d 838 [Crim Ct, NY County 2005]; People v Rodriguez, 59 AD2d 705 [2d Dept 1977].)
The complaint before us establishes neither the knowledge nor the likelihood of harm, but merely alleges that the defendant, who was then 18 years old, told the 14-year-old complainant that he loved her, and told her to come away with him over the objections of her father. We decline to find that a teenager’s attempt to woo another teenager, albeit misguided and clumsy, constitutes endangering the welfare of that child. *838 (See e.g. People v Doe, 14 Misc 3d 1229[A], 2007 NY Slip Op 50217[U], *2 [Greene County Ct 2007] [dismissing a complaint alleging that defendant, who was then 19, was kissing the complaining witness, then a week shy of her 16th birthday, and holding that “two teenagers may agree to kiss each other without fear of being arrested and charged with a crime”].) Some nexus is required between defendant’s conduct and the likelihood of injury.
The mere allegations that the defendant told the complainant that she should not listen to her parents and should go with him, without more, are insufficient to establish endangering the welfare of a child. (People v Cruz, 10 Misc 3d 838 [2005]; People v Hitchcock, 98 NY2d 586 [2002]; People v Grajales, 179 Misc 2d 793 [Crim Ct, Bronx County 1999].) The desire to rebel — to “not listen to [one]’s parents” — is precisely the type of behavior natural to teenagers making the perilous and hormone-fraught journey to young adulthood. (See e.g. Robert LaCamera, M.D., Adolescent rebellion: a survival guide for living with a teenager, Yale-New Haven Children’s Hospital Library [2008 rev].) Like Romeo and Juliet, or Tony and Maria of West Side Story, teenagers are expected to talk about forging a new identity for themselves independent of that of their parents. (Id.) The People have failed to show how such talk, alone, was likely to endanger the physical or moral welfare of the complainant. The counts of endangering the welfare of a child are therefore dismissed.
The Defendant Has Not Moved to Dismiss the Counts of Trespass (Penal Law § 140.05) and Criminal Trespass in the Third Degree (Penal Law § 140.10)
Defendant’s motion was made prior to service of the superseding information, and therefore seeks no relief with regard to the counts of trespass (Penal Law § 140.05) and criminal trespass in the third degree (Penal Law § 140.10) added by the superseding information. Accordingly, we have no occasion to rule upon those counts, and defendant’s right to make motions with regard thereto is preserved.
Reservation of Rights
Defendant’s motion to reserve his right to make further motions is granted to the extent allowed for by CPL 255.20 (3).
*839 Conclusion
For reasons set forth above, defendant’s motion to dismiss the counts of aggravated harassment in the second degree (Penal Law § 240.30), harassment in the second degree (Penal Law § 240.26), and endangering the welfare of a child (Penal Law § 260.10) is granted.

. But see 15 USC § 6102, subsequently making it illegal to call, for commercial purposes, persons who put their numbers on a state or federal “do not call” list.

. William Shakespeare, Romeo and Juliet, act I, scene 1.

. Sue Towsend, The Secret Diary of Adrian Mole Aged 138/4 (1982).

. Dion and the Belmonts, Teenager in Love (Laurie 3027 1959).

. Roxanne Khamsi, Puppy love makes teenagers lose the plot, New Scientist, Aug. 14, 2007 (describing a study conducted by the Psychiatric University of Basel, Switzerland, showing that intense romantic love in teenagers is a “psychopathologically prominent stage” not unlike the hypomania associated with bipolar disorder).

. Available at http://en.wikipedia.org/wiki/MySpace (last visited Mar. 31, 2008).

. The People assert in their opposition that while the complaining witness never blocked the defendant from communicating with her, she disabled her MySpace account at some point after the incident. (People’s mem at 3.) Leaving aside the hearsay nature of this allegation, and the omission of the date upon which the complainant is alleged to have disabled her account, the People do not assert that the complainant disabled her MySpace account in order to prevent the defendant from communicating further with her, or whether other reasons, such as parental concern, were the cause of her withdrawal from the Web site.