(March 3, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND NEVEDO, Appellant. [608 NYS2d 422] —Judgment, Supreme Court, New York County (Bernard Fried, J.), rendered May 15, 1991, convicting defendant, after jury trial, of three

counts of robbery in the first degree, three counts of burglary in the first degree, and one count of robbery in the second degree, and sentencing him, as a predicate violent felon, to concurrent indeterminate prison terms of 12½ to 25 years on each of the first degree robbery and burglary counts, and a concurrent indeterminate term of imprisonment of 7½ to 15 years on the count of robbery in the second degree, reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remanded for a new trial.

The People's evidence, credited by the jury, established that on June 27, 1989 the defendant and two accomplices burst through the complainant's apartment door at 1839 Lexington Avenue in Manhattan and forced her at gunpoint to lead them to money and jewelry contained in the apartment. While the defendant and his accomplices ransacked the apartment, the complainant, fearful for her life, jumped out a third story window to the street below, severely injuring her arm and back. When the assailants exited the building minutes later, one of defendant's accomplices fired a gun at a 13 year old boy they came upon in the building's courtyard, hitting him in the arm. Approximately six weeks later, while driving with her husband, the complainant fortuitously came upon the the defendant standing on a sidewalk. The police were summoned, the defendant was arrested, and he was found to be wearing several items of jewelry that had been reported stolen during the robbery.

The defendant argues that his conviction should be reversed on the ground of prejudicial statements made by the prosecutor during summation. Although, as a matter of law, this argument has not been preserved for appellate review (CPL 470.05 [2]), in the exercise of our discretion we reach this issue in the interest of justice (CPL 470.15 [6] [a]; *People v Jackson*, 174 AD2d 552).

Asserting the defendant, who testified on his own behalf during trial, to be "the very image of Janus," described as the Roman "God of contradictions [with] two faces, one face going forward and then one face going backwards," the prosecutor during summation spoke of the defendant's "uncanny ability to look you in the eye while telling you lie after lie after lie * * * over and over and over and over again." In a flight of hyperbole, the prosecutor also said that "if you had a penny for every lie, every evasion, every contradiction this defendant was caught in, you might be able to do something about the federal deficit and Dave Dinkins might be able to hire nine

thousand more police officers." Additionally, the prosecutor described the defendant's face as "chiseled, menacing," and urged the jurors to "[r]emember the eyes, cold eyes, eyes that give off no warmth. Eyes that give off no light," submitting to the jury that the complainant "looked into the windows of [the defendant's] soul and she saw a heart of darkness." Although a prosecutor may surely argue reasons why a witness may have cause to recognize a particular face, these comments were, cumulatively, unduly prejudicial. Further, although the defendant was not accused of the shooting, the prosecutor also stated to the jury that "[defendant is] especially good at frightening people. He's especially good at robberies where a thirteen year old kid gets shot," and "[y]ou just don't shoot kids. You don't spill the blood of the young. You don't spill the blood of the innocent." The prosecutor's summation contains other excesses similar to the foregoing.

The purpose of summation is not to test a prosecutor's skills for purple rhetoric, nor a prosecutor's talents for hyperbole or metaphor. "It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within 'the four corners of the evidence' [citation omitted] and avoid irrelevant comments which have no bearing on any legitimate issue in the case [citations omitted]" *(People v Ashwal,* 39 NY2d 105, 109). It is not proper for the prosecutor to use "inflammatory language which appeals to the sympathies and fears of the jury" *(People v Ortiz,* 116 AD2d 531, 532), or to repeatedly characterize the defendant as a liar *(People v Ortiz,* 125 AD2d 502, 503; *People v Dowdell,* 88 AD2d 239, 247). Moreover, we hold the prosecutor's characterization of the defendant's facial features as indicating the nature of his character to be error.

It is frustrating and distressing to have to reverse the conviction of a defendant who the evidence shows is almost certainly guilty of very serious and violent crimes. But every accused in our criminal justice system, no matter how strong the evidence against him, is entitled to a fair trial, and that includes having his or her case heard by a jury that finds the facts solely on the evidence, ideally via cool and detached deliberations. Courts have therefore held on numerous occasions and over many years that summations which unduly inflame the jury's emotions constitute error, simply because emotional turmoil tends to cloud the mind and interferes with the jury's function to weigh and evaluate the evidence objectively. In this case 13 days of a Supreme Court trial, over 1,300 pages of transcribed record, the time of Judge, jurors,

witnesses and court personnel, and considerable taxpayer dollars, have been rendered utter waste, all because a prosecutor was overzealous in his quest for a conviction, and perhaps became enamored of hearing his own rhetoric.

While any one of the rhetorical excesses by the prosecutor during summation might well be deemed harmless error, "[u]ltimately, sufficient harmless errors must be deemed 'harmful' " *(People v Dowdell, supra,* at 248). Moreover, the cumulative effect of the errors here was to deny the defendant the fair trial to which he was entitled, and we are accordingly constrained to reverse and remand for a new trial "without regard to any evaluation as to whether the errors contributed to the defendant's conviction" *(People v Crimmins,* 36 NY2d 230, 238). We have examined the defendant's other contentions and find them to be without merit. Concur—Murphy, P. J., Carro and Ellerin, JJ.

Kupferman, J., dissents in a memorandum as follows: Once again, we are met with an undue burden being placed upon the criminal justice system *(see, e.g., People v Davis,* 169 AD2d 379, 382 [Kupferman, J., dissenting]). As the majority concedes, the defendant is "almost certainly guilty of very serious and violent crimes." The error found by the majority is the fact that the prosecutor, in summation, used excessive hyperbole. Perhaps we could note our disapproval *(see, People v Torres,* 171 AD2d 425, *lv denied* 77 NY2d 1001). Perhaps even if the matter had been preserved, one could concur in the majority's conclusion, albeit reluctantly, but here this matter is remanded for a new trial "in the interest of justice." I believe it has exactly the opposite effect.