■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARAMSINGH BHUPSINGH, Appellant. [746 NYS2d 490]

At the conclusion of the second round of jury selection, the defense counsel exercised peremptory challenges to five male prospective jurors. Arguing that the defense counsel was purposefully excluding males from the jury, the prosecutor raised a reverse-Batson objection (see Batson v Kentucky, 476 US 79; People v Kern, 75 NY2d 638, cert denied 498 US 824). The trial court demanded gender-neutral reasons for the defense counsel's challenges to those jurors.

Regarding his reasons for challenging prospective juror number seven, the only challenge at issue herein, the defense counsel explained that he did so because of, inter alia, the prospective juror's strong ties to law enforcement. The defense counsel noted that juror number seven had many friends who were police officers with whom he often socialized and discussed their aspirations for career advancement in law enforcement. One police officer was a liaison officer in the court where the case was being tried, and the prospective juror had spent time

with that friend the previous evening. Indeed, when the court asked this prospective juror whether he could be fair and impartial when considering police testimony he twice responded that he could not, and ultimately stated that he could be fair only after being asked a third time. The trial court seated the juror over the objection of the defendant on the basis that the reasons proffered by the defense counsel were "not sufficient to be gender-neutral."

During the same round of jury selection, the prosecutor successfully opposed the defendant's *Batson* objection to her peremptory challenge of prospective male juror number two. The juror was of the same ethnic background as the defendant and described a negative encounter with the police in his native country many years before. The prosecutor gave the importance of police testimony at trial as her race-neutral explanation for her peremptory challenge to prospective male juror number two. It was disinguous for the prosecutor to oppose, as pretextual, the defendant's challenge to prospective juror number seven, who had strong ties to the police, while at the same time arguing that her challenge to prospective juror number two was not pretextual.

This Court observed in *People v Dixon* (202 AD2d 12, 17) that a gender-neutral explanation "must merely be one in which gender-related considerations play no role; the explanation provided need not amount to one which would justify a challenge 'for cause'" (*id.,* citing *Hernandez v New York,* 500 US 352; *see People v Peart,* 197 AD2d 599; *People v Duncan,* 177 AD2d 187). When evaluating whether a gender-neutral explanation for the exercise of a peremptory challenge is pretextual, a trial court is generally in the best position to make the determination (*see Hernandez v New York, supra*).

Here, the trial court erred in rejecting the defense counsel's peremptory challenge to prospective juror number seven. His explanation of his concern "about the prospective juror's association with the police [was] not pretextual on its face" (*People v Wilson,* 224 AD2d 725, 726). Additionally, his "reasons were based on questions posed to the prospective juror, related to the case and based on facts elicited in the voir dire" (*id.* at 726). The defendant is thus entitled to a new trial.

As there must be a new trial, we note that the conduct of the prosecutor in this case might well have served as an additional basis for reversal. The record contains numerous clearly improper statements by the prosecutor. "[P]ersistent questioning of [a] defendant on collateral matters tending to denigrate him [or her] without being probative of the crime charged con-

stitutes improper and prejudicial cross-examination" (*People v Sandy,* 115 AD2d 27, 32). For example, during cross-examination of the defendant, the prosecutor asked improper questions about his family members, their reasons for attending the trial, and the content of conversations the defendant may have had with them after his arrest. Additionally, the prosecutor made sarcastic remarks to the defendant about his testimony, and she even suggested that the defendant's wife did not believe his denials of guilt.

The prosecutor also continually asked leading questions of prosecution witnesses, placed inadmissible hearsay before the jury, and improperly elicited evidence of prior consistent statements made by the complainant.

In her summation, the prosecutor made numerous prejudicial and inflammatory comments. Although prohibited from appealing to the sympathy of the jury (*see People v Andre,* 185 AD2d 276, 278), the prosecutor argued improperly that the victim had testified, seeking "a little bit of justice." She continued to the jury, "[y]ou can't make it better. You can't erase it like it never happened. But she can get the knowledge that what he did to her that night he didn't get away with. He didn't totally get away with it." Further, the prosecutor made several improper comments which denigrated both the defense counsel and the defense (*see People v Lombardi,* 20 NY2d 266). We would remind prosecutors that "they are something more than mere advocates or partisans and that they represent the People and the People's justice in presenting proof" (*People v Steinhardt,* 9 NY2d 267, 269).

In light of our determination to reverse the judgment, we have not considered the defendant's other contentions. Goldstein, J.P., McGinity, H. Miller and Townes, JJ., concur.