*743 OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously reversed upon the law and matter remanded for a new trial.
Defendant is the publisher of Screw magazine, an adult publication, and an adult-content public-access cable television show, “Midnight Blue.” The complainant was, for some 11 weeks, his personal assistant. It is alleged that after the complainant left defendant’s employ, he made threatening and harassing telephone calls and mailed copies of Screw editorials and “Midnight Blue” segments to her. Defendant was charged with aggravated harassment in the second degree (Penal Law § 240.30 [1], [2]) and harassment in the second degree (Penal Law § 240.26 [1], [3]), stemming from incidents occurring between May 22, 2001 and June 23, 2001. Defendant was convicted of 5 of the 12 counts with which he was charged.
Defendant’s conviction must be reversed because the prosecutor’s remarks in summation exceeded the bounds of propriety and fair response to the defense, and the cumulative effect of these remarks deprived defendant of a fair trial (People v Smith, 288 AD2d 496 [2001]; People v Ortiz, 125 AD2d 502 [1986]). Although some of the statements at issue on this appeal were made without objection, and thus not preserved as a matter of law (see CPL 470.05), under the circumstances, review in the exercise of this court’s discretion is warranted. While it is the right of counsel in summation, defense and prosecution alike, “to comment upon every pertinent matter of fact bearing upon the questions the jury [has] to decide” and to do so with the widest latitude, “summation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command” (People v Ashwal, 39 NY2d 105, 109 [1976] [internal quotation marks omitted]). This is particularly so because the prosecutor’s mission is not necessarily to convict, but rather to achieve a just result (People v Bailey, 58 NY2d 272, 277 [1983]; People v Zimmer, 51 NY2d 390, 393 [1980]).
In the present case, the prosecutor, without any attempt to temper his language, improperly stated on a number of occasions that defendant had lied about various matters (see People v Martin, 172 AD2d 268 [1991]; People v Hudson, 104 AD2d 157 [1984]; People v Dowdell, 88 AD2d 239 [1982]). The defense’s summation had questioned the complainant’s credibility and had argued that certain of her testimony should not *744 be believed or credited, but had not accused her of lying or of being a liar. There was nothing in the defense summation that could be said to have provoked the prosecutor’s extreme and persistent mode of discourse (cf. People v Galloway, 54 NY2d 396 [1981]). In direct contrast to his characterization of defendant, on several occasions the prosecutor vouched for the complainant, flatly stating that she had “told the truth, unlike defendant,” that “she’s not lying” or had “no motive” to lie about various items of testimony (see People v Clark, 120 AD2d 542, 544 [1986]; People v Dowdell, 88 AD2d at 248).
While a prosecutor is “clearly entitled to respond by arguing that the witness [ ] had, in fact, been credible” (People v Overlee, 236 AD2d 133, 144 [1997]), and certain of the prosecutor’s remarks served that proper purpose, others went beyond any permissible and fair argument that the complainant had testified truthfully (see People v Overlee, 236 AD2d 133 [1997], supra; People v Salaman, 231 AD2d 464 [1996]). Indeed, some of the remarks did violence to the evidence itself. For example, the prosecutor on two occasions argued, apparently to bolster the impression of complainant’s truthfulness and to make defendant appear ridiculous, that the complainant stole $130,000 from him in petty cash, an assertion in no way supported by the record (see People v Wasserman, 46 AD2d 915 [1974]). The prosecutor’s contrasting reference to defendant’s alleged motive to lie because he had a pending insurance claim for the $130,000 is also prejudicial (see People v Ashwal, 39 NY2d at 109; People v Nevedo, 202 AD2d 183, 185 [1994]).
In addition, the prosecutor improperly denigrated defense counsel on a number of occasions, stating that “there were a whole lot of misrepresentations in defense counsel’s closing” and “there were outright falsehoods,” characterizing one of counsel’s arguments as “an outright lie,” and stating that this was one of “many, many things that he said during his summations that were just outright false” (see People v Lombardi, 20 NY2d 266, 273 [1967] [prosecutor’s statement that defense counsel was “dishonest” was prejudicial as a matter of law]).
Finally, the prosecutor ended his summation by improperly telling the jury that there was “nothing that you can do that is ever going to give back to Jennifer Lozinski what she lost”; “nothing that you are going to do that’s going to make [defendant] understand”; and that “There is nothing that you are going to do that is even going to make him care.” These gratuitous remarks could have no other purpose but to inflame the jury (see People v Bhupsingh, 297 AD2d 386, 388 [2002] *745 [involving substantiallysimilar language]; People v Miller, 149 AD2d 439 [1989] [improper to cast jury in role of community defender or avenger]; People v Ortiz, 125 AD2d at 503). While an objection inteijected at this point was sustained, the court neither admonished the prosecutor nor gave any curative instruction directed to this statement (see People v Ashwal, 39 NY2d at 111). The prosecutor then compounded the impropriety by urging the jury to “do what is right” by convicting defendant (People v Bhupsingh, 297 AD2d at 388; People v Kirkland, 199 AD2d 54 [1993]; People v Jorge, 171 AD2d 498 [1991]).
Nor can these instances be dismissed as harmless error. While no single remark was so outrageous as to warrant a new trial in and of itself, the cumulative effect of the People’s summation deprived defendant of a fair trial (see e.g. People v Calabria, 94 NY2d 519, 523 [2000]; People v Smith, 288 AD2d 496 [2001]; People v Dowdell, 88 AD2d at 248). Even if any one or a combination of the statements at issue could be considered harmless, “ultimately, sufficient harmless errors must be deemed ‘harmful’ ” (People v Dowdell, 88 AD2d at 248; see People v Nevedo, 202 AD2d at 186). The line was crossed in this case, especially as the evidence of guilt was by no means overwhelming; defendant was acquitted on several counts and the trial nearly ended in a hung jury (People v Smith, 288 AD2d 496 [2001]; People v Bell, 191 AD2d 361 [1993]).
In light of this disposition, several other issues must be addressed.
Defendant has argued that the aggravated harassment statute (Penal Law § 240.30 [1], [2]) is unconstitutional as applied in this case. While the People object that these issues were not preserved (see CPL 470.05 [2]), the trial court entertained defendant’s untimely pretrial motion on this ground, and defendant moved again on this ground prior to jury selection, prior to commencement of trial, at the close of the People’s case, and at the close of the evidence. Furthermore, contrary to the People’s assertion, these motions were directed to all of the counts and were not confined to the counts involving mailing of published or broadcast material.
Defendant’s contention that the aggravated harassment statute (Penal Law § 240.30 [1], [2]) is unconstitutional because defendant was within his First Amendment rights in making various statements is without merit. Defendant was prosecuted for communicating the subject statements to the complainant, an unwilling recipient, either by mail, “in a manner likely to cause annoyance or alarm” (Penal Law § 240.30 *746 [1]), or by telephone with no legitimate purpose of communication, and for doing so with the intent to harass, annoy, threaten or alarm.
As to the mailing count of which he was convicted, defendant argues that the mere distribution of printed material has never been held sufficient to violate the statute (see e.g. People v Dupont, 107 AD2d 247 [1985]). However, more than the “mere distribution” of printed material was involved in the count of which defendant was convicted. In fact, the publication of his remarks in Screw and the making of them on the air on ^‘Midnight Blue” formed no part of this prosecution whatsoever. Upon the “mailing count” of which he was convicted, the People alleged that defendant enclosed the Screw editorial material with a letter, mailed directly to the complainant, which stated, in part, that “I said I would take you down and I meant it”; “I will take you down. I knew what I was doing when I said that on your answering machine. I knew it was recording and I will take you down. You are nothing but a slimy piece of s — t”; and “I will do everything I can to help the public know what a loathsome turd you are. I’m only beginning. You are finished as a secretary. You are finished as employable.” For this reason alone, the present case is distinguishable from Dupont, which did not involve communicating directly to the complaining witness or otherwise invading his privacy, but publication to the community at large, perhaps a tort, but not a violation of the aggravated harassment statute.
Much the same reasoning applies to the telephone counts. In the calls for which he was convicted, defendant left messages in the complainant’s voice mail to the effect that he would “take [her] down,” that he would do to her everything he had done to another former assistant, and that she would be indicted shortly (see generally People v Shack, 86 NY2d 529 [1995]). People v Mangano, 100 NY2d 569 [2003]) is readily distinguishable, as it involved telephone messages that, while “crude and offensive,” were “made in the context of complaining about government actions, on a telephone answering machine set up for the purpose * * * of receiving complaints from the public” (Mangano, 100 NY2d at 571 [2003]), putting the speech at issue outside the ambit of Penal Law § 240.30 (1), with which defendant in that case was charged. The present case involves no such public interest or facility, but communications to the private home of an unwilling recipient.
Neither Penal Law § 240.30 (1) nor (2) prohibits speech or expression. Each is facially limited to proscribing conduct, *747 respectively, communicating and making a telephone call (id.). In addition, subdivision (2) specifically excepts calls made with some “purpose of legitimate communication” from the statute’s ambit (see Shack at 535). Subdivision (1) is specifically limited to communication “in a manner likely to cause annoyance or alarm.” Both subdivisions require a showing of defendant’s intent to “harass, annoy, threaten or alarm.” Thus, they exclude from the statute’s ambit speech which is merely unpleasant to the recipient (id.; cf. e.g. People v Morgenstern, 140 Misc 2d 861 [1988]).
As applied to defendant, the aggravated harassment statute is properly directed to communications, made to an unwilling recipient, wherein “substantial privacy interests are being invaded in an essentially intolerable manner” (People v Dupont, 107 AD2d at 252, quoting Cohen v California, 403 US 15, 21 [1971]). Furthermore, the behavior alleged against defendant falls squarely into this core proscription of the aggravated harassment statute (People v Dupont, 107 AD2d at 252; People v Smith, 89 Misc 2d 789, 790-791 [App Term, 9th & 10th Jud Dists 1977]). The “form of trespass” alleged against defendant is not entitled to constitutional protection in the first instance (People v Smith, 89 Misc 2d at 790). Finally, contrary to defendant’s contention, repetition of the offending act is not required. (People v Shack, 86 NY2d at 541; see People v Wood, 260 AD2d 102, 109 [1999], affd 95 NY2d 509 [2000].)
Defendant also alleges that the “conviction was legally insufficient,” a contention that must be addressed in view of the grant of a new trial, as any counts for which the People failed to make out a prima facie case at the previous trial would have to be dismissed (CPL 290.10, 360.50; see generally People v Dlugash, 41 NY2d 725 [1977]). Although the People contend that this issue is also not preserved, counsel alleged the People’s failure to “put on a prima facie case” as his first ground for seeking a trial order of dismissal at the close of the People’s case. The arguments in support of this contention are those discussed previously, in essence, that the charged communications were outside the ambit of the statute, or, put another way, that the statute was unconstitutionally applied to defendant. Defendant does not address any specific evidentiary shortcoming in the proof offered upon any of the counts.
Therefore, it is sufficient to note that the People introduced admissible evidence from which a rational jury, viewing the evidence in the light most favorable to the People (People v Contes, 60 NY2d 620 [1983]), could, by valid lines of reasoning *748 and permissible inferences (People v Bleakley, 69 NY2d 490 [1987]), find that defendant made each of the communications underlying each of the counts of which he was eventually convicted either in a manner likely to annoy or alarm, or without any legitimate purpose of communication, and that he did so with the requisite intent.
A jury could properly find from the People’s evidence that defendant used abusive and profane language extensively in all the communications at issue, knowing complainant’s sensitivity to such language, and that various portions of the language constituted threats, indicating both intent and that the complainant was an unwilling recipient. A jury could also properly find, in the case of the phone calls, that they did not attempt to discuss any legitimate subject matter, and from this, that they were made with no legitimate purpose of communication (see e.g. People v Miguez, 147 Misc 2d 482 [1990], affd 153 Misc 2d 442 [App Term, 1st Dept 1992]; cf. People v Livio, 187 Misc 2d 302 [2000] [racial epithet at end of telemarketing call]). In the case of the letter, the jury was entitled to find, based upon the People’s evidence, that the letter contained threats and, furthermore, that the communication was made in a manner likely to annoy or alarm (see People v Kochanowski, 186 Misc 2d 441 [App Term, 9th & 10th Jud Dists 2000]).
As the issue is likely to arise again on retrial, defendant’s contention that the prosecution improperly used editorial statements published in Screw, to the effect that terrorists should fly airplanes into and send anthrax letters to the Brooklyn District Attorney’s office, in cross-examination of defendant upon his character for peacefulness, should also be addressed. The court’s pretrial Sandoval ruling had forbidden the use of these statements to impeach defendant’s credibility. However, defendant subsequently opened the door to their use by placing his character for peacefulness at issue (see e.g. People v Rios, 166 AD2d 616 [1990]; see generally Prince, Richardson on Evidence § 4-407, at 168-169 [Farrell 11th ed]).
Defendant’s objection, raised at trial and upon this appeal, was that the prosecution violated the First Amendment by using published statements, legal when uttered, to impeach defendant’s character. The prosecution’s use of the material in question was proper, and should defendant take the stand at his retrial and again place his character at issue, may be repeated.
Defendant put forward the proposition that while he says many outrageous things, it could not be reasonably expected *749 that any of them might be acted on. While this might have been true on September 10, 2001, the temporal context of these statements is important. They were made in early December 2001, less than three months after the World Trade Center attack, in which terrorists had indeed flown planes into buildings, and during a period that featured frequent anthrax scares, including the mailing of anthrax spores to various offices and individuals. It is not the content of defendant’s words, but their potential for provocation to violence, that is relevant to this prosecution (see R.A.V. v St. Paul, 505 US 377, 385 [1992] [contrasting forbidden content-based hate speech ban with “fighting words,” which may be barred, not for content, but because of their effect of causing immediate breach of peace]; see also People v Prisinzano, 170 Misc 2d 525, 530-532 [1996]). The context of a statement’s utterance is an essential factor in determining this potential (People v Prisinzano, 170 Misc 2d at 531, quoting Chaplinsky v New Hampshire, 315 US 568, 573 [1942]). Defendant’s words were, self-admittedly, meant to be inflammatory when made, and defendant cannot now complain about this effect.
Aggravated harassment in the second degree (Penal Law § 240.30 [1]) involves communication, of whatever content, “in a manner likely to cause annoyance or alarm.” The fact that defendant was willing, in the immediate post-September 11 context, to make statements advocating that airplanes be flown into the District Attorney’s office, or that anthrax letters be sent there, is relevant to the character issue, raised by defendant himself, of whether it was likely that he would engage in the conduct against Jennifer Lozinski with which he was charged. Defendant’s First Amendment rights to say what he said are irrelevant to that determination. Furthermore, the conduct of publishing an editorial to the world at large is not illegal, and in any event is sufficiently different from the conduct of harassing an individual, as charged in this case, that no improper inference of defendant’s propensity to harass is raised thereby (see generally People v Vargas, 88 NY2d 856 [1996]; People v Molineux, 168 NY 264 [1901]).
In light of the disposition of this matter, it is unnecessary to reach defendant’s remaining contentions.
Pesce, P.J., Aronin and Golia, JJ., concur.