■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTWON WHITE, Also Known as ANT, Also Known as ANT MAN, Appellant. [913 NYS2d 818]—

Cardona, P.J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered September 25, 2007, upon a verdict convicting defendant of the crimes of assault in the first degree, assault in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and reckless endangerment in the first degree.

In the early morning hours of May 26, 2006, defendant and Jamil Jordan were driving in the City of Schenectady, Schenectady County, when they stopped to talk to a female acquain-

tance of Jordan. A male exiting a nearby party stopped to ask where defendant and Jordan were from and, upon being informed that they were from the City of Albany, the man shouted that information to the crowd also leaving the party in an apparent attempt to cause a confrontation. Jordan, the passenger, exited the car and started to fight with the man who had called out to the crowd. At some point thereafter, defendant exited the car and brandished an unlicensed handgun. Defendant fired the handgun,[1] allegedly striking the victim—a bystander—in the head, causing permanent brain damage and leaving the victim in an apparently irreversible persistent vegetative state.

Defendant was charged with attempted murder in the second degree, two counts of assault in the first degree (one alleging intentional conduct, the other alleging reckless conduct under circumstances evincing a depraved indifference to human life), assault in the second degree, criminal possession of a weapon in the second and third degrees and reckless endangerment in the first degree. After a jury trial, defendant was acquitted of the charges of attempted murder and intentional assault in the first degree, but convicted of the remaining five counts. He was sentenced to an aggregate prison term of 25 years, to be followed by five years of postrelease supervision.

Initially, we are unpersuaded by defendant's contention that County Court (Drago, J.) erred in precluding him from calling at the *Wade* hearing the sole witness who identified him from a photo array, as well as certain other witnesses who failed to identify him after reviewing that same array. According to defendant, those witnesses should have been called so that he could explore whether the non-identifying witnesses somehow influenced the identifying witness because of a prior acquaintanceship. Notably, defendant does not assert herein that the photo array was unduly suggestive. Thus, the court's determination was a discretionary one (*see e.g. People v Chipp*, 75 NY2d 327, 339 [1990], *cert denied* 498 US 833 [1990]; *People v Skinner*, 220 AD2d 806, 807-808 [1995], *lv denied* 87 NY2d 1025 [1996]). Given that defendant's stated reasons for calling the witnesses were premised on speculation, we find no abuse of discretion in the denial of his request (*see People v Taylor*, 80 NY2d 1, 15 [1992]; *People v Skinner*, 220 AD2d at 808). Further,

---

1. Defendant testified at trial that he fired a warning shot into the air and did not believe he shot the victim. Defendant also asserted a justification defense claiming that he reasonably believed deadly force was necessary to defend himself or another from the imminent use of such force by persons in the crowd near the vehicle.

we conclude that County Court (Giardino, J.) did not err in declining defendant's later request to reopen the hearing for that purpose.

Next, defendant contends that County Court improperly denied his trial motion to dismiss the first two counts of the indictment alleging intentional conduct, i.e., attempted murder in the second degree and intentional assault in the first degree. However, inasmuch as defendant was acquitted of both counts by the jury, this issue is moot (*see People v Brown*, 83 NY2d 791, 794 [1994]; *People v Scott*, 283 AD2d 1006, 1006 [2001], *lv denied* 96 NY2d 907 [2001]). As for defendant's argument that, regardless of the acquittal, he was nevertheless prejudiced as a result of trial evidence submitted in support of those counts that negatively impacted the jury, we note that this claim "rests on unsupported speculation as to the jury's thought processes" (*People v Reynoso*, 262 AD2d 102, 103 [1999], *lv denied* 93 NY2d 1025 [1999]).

Citing four examples, defendant next claims that various trial errors by County Court were, alone or cumulatively, sufficient to require a new trial. Defendant first maintains that his motion for a mistrial should have been granted after the court permitted the victim's family to bring the victim into the courtroom during the proceedings.[2] Whether the victim, who was not a potential fact witness (*see generally People v Santana*, 80 NY2d 92, 100 [1992]), could be seated with the spectators was a discretionary determination of the court. Notably, the court was mindful of the defense's concerns and warned the victim's family that his presence was permissible as long as there were no disruptions.[3] Further, defendant declined the court's offer to instruct the jury that it was not to consider sympathy for the victim or be biased against defendant based on the victim's presence. Upon review of the record, we do not find that the court abused its discretion under the circumstances or, further, that defendant's right to a fair trial was violated as a result of the victim's presence in the courtroom.

Defendant additionally argues that, in light of his stipulation that the victim sustained a serious physical injury, he was deprived of a fair trial as a result of testimony elicited by the

---

**2.** The record does not support defendant's assertion that the family's request was part of an orchestrated attempt to influence the jury that was "attributable to the prosecutor" (*People v Grady*, 40 AD3d 1368, 1374 [2007], *lv denied* 9 NY3d 923 [2007]).

**3.** In fact, after the victim began making audible involuntary noises during the proceedings, County Court cleared the room and directed the victim's family to take him out of the courtroom so the jury would not be distracted.

prosecutor from members of the victim's family concerning, among other things, his injuries and physical condition. While testimony concerning immaterial information should appropriately be excluded by trial courts (*see People v Harris*, 98 NY2d 452, 490-491 [2002]), the People were, despite the stipulation, still required to prove their case beyond a reasonable doubt and present "relevant material evidence as to [each] element of a charged crime" (*People v Hills*, 140 AD2d 71, 80 [1988], *lv denied* 73 NY2d 855 [1988]). Thus, information concerning the victim's injuries had relevance to an issue at trial. Moreover, we find that County Court did not err in allowing certain limited information from the witnesses concerning how the victim came to be at the site of the shooting and his overall demeanor at the time of the incident. To the extent that the prosecutor's questions strayed into irrelevant areas, the court appropriately sustained objections and instructed the jury that it was not to allow sympathy for the victim to affect its deliberations. Thus, the court minimized any "potential prejudicial impact of such testimony" (*People v Smith*, 217 AD2d 221, 238 [1995], *lv denied* 87 NY2d 977 [1996]).

Defendant also argues that County Court erred in refusing to grant a mistrial after a prosecution witness testified that defendant used a "gang-related" phrase. Specifically, one of the People's witnesses testified that he heard defendant utter the phrase "What's poppin'?" after he got out of his vehicle to face the crowd. When the prosecutor asked what that phrase meant, the witness replied that it was "a gang-related . . . slur." County Court sustained defendant's objection and instructed the jury to disregard the phrase "gang-related." Given the immediate curative instruction, we do not find that this incident was so prejudicial that defendant was denied a fair trial (*see People v Bush*, 75 AD3d 917, 919 [2010]), especially since the record does not support defendant's claim that the response was elicited as a deliberate attempt to circumvent the court's *Molineux* ruling precluding gang-related testimony.

Defendant next objects to County Court's rulings in response to a court officer's improper communication with a juror (*see* CPL 310.10 [1]). We find that the court's inquiry and remedial actions were sufficient under the circumstances. Specifically, the court questioned the juror, who stated that the brief communication had no effect on her ability to be fair and impartial. County Court then instructed the juror that the court officer's actions were improper and appropriately declined defendant's request for additional instructions. Given the juror's responses to the court's questions and the absence of proof indicating that the

court officer "usurped" judicial authority (*see generally People v Kelly*, 5 NY3d 116, 120 [2005]) or otherwise influenced or intimidated the juror, reversal is not required. Accordingly, viewed separately or as a whole, we do not find that the challenged trial rulings on the part of County Court necessitate a new trial.

We turn next to defendant's argument that prosecutorial misconduct, particularly on the People's cross-examination of defendant and in summation, deprived him of a fair trial. In determining "whether a reversal is warranted on this ground, we must assess the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (*People v De Vito*, 21 AD3d 696, 700 [2005] [internal quotation marks and citation omitted]). In applying that standard herein, we conclude that reversal is not warranted.

With respect to the People's cross-examination of defendant, "[o]nce a defendant testifies and places his [or her] credibility in issue, a prosecutor need not tread lightly in cross-examining . . . or arguing [the] case to the jury" (*People v Overlee*, 236 AD2d 133, 136 [1997], *lv denied* 91 NY2d 976 [1998]). We note that most of the challenged remarks on the part of the prosecutor were made in the context of responses to statements that defendant made during his direct testimony or arose as the result of obvious inconsistencies (*see id.* at 136). Significantly, where defense counsel registered appropriate objections, County Court admonished the prosecutor accordingly. To the extent that certain of the remarks were improper or unnecessary, they fell short of the sort of "egregious" misconduct that would have deprived defendant of a fair trial (*see id.; see also People v Houghtaling*, 79 AD3d 1155, 1158 [2010]).

Similarly, to the extent that defendant correctly argues that certain statements made by the prosecutor during summation were improper, the comments must be examined in context with statements made by defense counsel during summation (*see People v Overlee*, 236 AD2d at 136). Viewed in that context, the majority of the challenged remarks were fair comment, as opposed to dwelling on irrelevant, collateral issues (*see e.g. People v Bhupsingh*, 297 AD2d 386, 387-388 [2002]). Moreover, we note that most of defendant's objections were sustained and curative instructions were given by County Court. Accordingly, upon review of all the remarks, in context, we find that the

prosecutor's overall behavior at trial did not demonstrate such "a flagrant and pervasive pattern of prosecutorial misconduct" that defendant is entitled to a new trial on that basis (*People v Demming*, 116 AD2d 886, 887 [1986], *lv denied* 67 NY2d 941 [1986]).

Finally, we find no abuse of discretion or extraordinary circumstances warranting a reduction of defendant's sentence in the interest of justice (*see People v Manley*, 70 AD3d 1125, 1125 [2010]; *People v Britt*, 283 AD2d 778, 781 [2001], *lv denied* 96 NY2d 916 [2001]). Although defendant had only a minimal prior criminal record, County Court specifically took into account the victim's devastating injuries combined with defendant's lack of remorse and refusal to take responsibility for his conduct.

Defendant's remaining arguments have been examined and found to be unpersuasive.

Rose, Lahtinen, Malone Jr. and McCarthy, JJ., concur. Ordered that the judgment is affirmed.