People v Firu (2020 NY Slip Op 20210)

People v Firu

2020 NY Slip Op 20210 [69 Misc 3d 1]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 28, 2020

[*1]

The People of the State of New York, Respondent,
v
Victor Firu, Appellant.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, August 14, 2020

APPEARANCES OF COUNSEL

Appellate Advocates (Alice R. B. Cullina of counsel) for appellant.
Melinda R. Katz, District Attorney, Queens (John M. Castellano, Johnnette Traill, Ellen C. Abbot and Ayelet Sela of counsel), for respondent.

{**69 Misc 3d at 3} OPINION OF THE COURT

Memorandum.

Ordered that the judgments of conviction are reversed, as a matter of discretion in the interest of justice and on the law, and the matter is remitted to the Criminal Court for a new trial.
Insofar as is relevant to this appeal, defendant was charged in separate accusatory instruments with assault in the third degree (Penal Law § 120.00 [1]) and harassment in the second degree (Penal Law § 240.26 [1]), respectively, for striking the complainant, his wife, causing her physical injuries and substantial pain. Following a jury trial, defendant was convicted of these charges and was sentenced to probation, and a five-year order of protection was issued.
The People's proof in this case rested almost entirely on the complainant's out-of-court statements. In a 911 call made from a grocery store at about 10:49 p.m., an unidentified man indicated that a woman had entered the grocery store on the corner of 40th Street and Queens Boulevard, and that she was bleeding and asking for help. Seven minutes later, a second 911 call was made, this time from the complainant. The complainant stated that she was in a store and [*2]bleeding, and that her husband became "very violent" and "beat [her] up so bad and [she] left the house." An emergency medical technician who arrived at the grocery store described the complainant as "crying. . . with multiple injuries. . . to the face and head," and testified that the complainant had told him that she had been attacked by her husband. More than a half hour later, at about 11:30 p.m., the responding officer arrived at the scene and saw the complainant bleeding from her face inside the ambulance. The officer testified that the complainant was speaking "hysterically" and said that her husband had punched her in the face.
Testifying for the defense were defendant Victor Firu and the complainant. Defendant and the complainant had been married since 1997 and moved to the United States from Romania with their son in 2006. Both testified that they had a discussion over defendant's excessive work hours when defendant slapped the complainant on her cheek. As the complainant ran{**69 Misc 3d at 4} out of the kitchen, she tripped and fell, sustaining injuries. Defendant tried to pick up the complainant from the floor, but she would not let him, and instead left the apartment. Defendant called a friend to come over to the apartment to watch his son so that he could look for his wife. The complainant went to a grocery store where someone handed her a phone and told her to speak to 911. She could not recall what she had said to the 911 operator. She denied telling anybody at the hospital that she had fallen to the floor to avoid defendant's punches, or that defendant had kicked her in the head. Although she admitted to providing a statement to the police that her husband had struck her in the face and back, she testified that she was tired and distraught when she signed the domestic incident report (DIR) which contained the statement. She further testified that she had to read the DIR in English, which was not her primary language.
Following the jury trial, defendant was convicted of assault in the third degree and harassment in the second degree.
On appeal, defendant contends that he was denied a fair trial. While no single error in this case may be grounds for reversal, we are compelled to conclude that the cumulative effect of many errors over the course of the trial, both by the court and the prosecution, served to deprive defendant of a fair trial (see People v Hudson, 104 AD2d 157 [1984]; People v Murphy, 88 AD2d 1000 [1982]; People v Goldstein, 196 Misc 2d 741 [App Term, 2d Dept, 2d & 11th Jud Dists 2003]). The most glaring of these errors was the prosecutor's unfounded, highly inflammatory accusation in her summation that defense counsel had colluded with the complainant and defendant to contrive a false account of what had happened.
A defendant's right to a fair and impartial trial before an unbiased jury is a cornerstone of our criminal jurisprudence (see People v De Jesus, 42 NY2d 519, 523 [1977]). Such right is assured
"in surroundings in which both the accused and the prosecution enjoy the unfettered attention of the jury, to the end that the resulting verdict will be the product solely of evidence adduced on the witness stand. Recognizing that juries are extremely likely to be impregnated by the environing atmosphere, criminal trials are to be so conducted that the proof will be legal evidence, unimpaired by intemperate conduct . . . and irrelevant asides, all {**69 Misc 3d at 5}of which obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence" (People v De Jesus, 42 NY2d at 523 [internal quotation marks and citations omitted]).
Thus, summation is not an opportunity for a prosecutor to engage in an " 'unbridled debate in which the restraints imposed at trial are cast aside' " (People v Goldstein, 196 Misc 2d at 743, quoting People v Ashwal, 39 NY2d 105, 109 [1976]). Such conduct not only [*3]compromises a defendant's right to a fair trial, but goes against a prosecutor's duty to ensure that "justice is done and the rights of all—defendants included—are safeguarded" (People v Lombard, 4 AD2d 666, 671 [1957]; see also People v Bailey, 58 NY2d 272, 276-277 [1983]; People v Goldstein, 196 Misc 2d at 743).
In the case at bar, the prosecutor exceeded the bounds of permissible rhetorical comment by accusing defense counsel of coaching witnesses to fabricate a defense. Such comments are extremely prejudicial, especially where, as here, there are sharp issues of credibility among the witnesses (see People v Gordon, 50 AD3d 821 [2008]). By impugning defense counsel's integrity, the prosecutor effectively misled the jury, sidetracking it from its responsibility to determine the facts (see People v Calabria, 94 NY2d 519, 523 [2000]; People v Robles, 174 AD3d 653, 655 [2019]; People v McReynolds, 175 AD2d 31 [1991]). Although the court sustained counsel's objection to the comments and admonished the jurors that there was "no evidence that either attorney intended to [impugn] the other one's character," the court's instruction was insufficient to ameliorate the damage that had already been done. "A court's instructions to a jury to disregard matters improperly brought to their attention cannot 'always assure elimination of the harm already occasioned' " (People v Calabria, 94 NY2d at 523, quoting People v Carborano, 301 NY 39, 42-43 [1950]). This is especially so in this case, where the prosecutor's remarks were not isolated but accompanied by other errors during the course of the trial.
In addition to denigrating defense counsel, the prosecutor twice improperly commented on defendant's pretrial silence as evidence of guilt by remarking that when the police had arrived, defendant did not say what had happened and did not ask the police to look for his wife (see People v De George, 73 NY2d 614, 617-618 [1989]; People v Casiano, 148 AD3d 1044, 1046 [2017]). The prosecutor also played back the complainant's 911 call to the jury, and read back her DIR statement during{**69 Misc 3d at 6} summation. However, neither of these statements should have been admitted at trial. Although defense counsel did not specifically object to the statements, we, nonetheless, review their admissibility on appeal in the interest of justice.
We find that the complainant's statements to the police, as well as those made in the 911 call, were hearsay statements that did not qualify as excited utterances. The excited utterance exception to the hearsay rule is a narrow one, reserved for those statements made under the stress of a startling event that is " 'sufficiently powerful to render [the] normal reflective processes inoperative' " (People v Cantave, 21 NY3d 374, 381 [2013], quoting People v Vasquez, 88 NY2d 561, 574 [1996]). "The test is whether the utterance was made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance" (People v Almonte, 33 NY3d 1083, 1084 [2019] [internal quotation marks omitted]; see also People v Brown, 70 NY2d 513, 518 [1987]). Thus, statements that fall within the exception should generally be "made contemporaneously or immediately after a startling event which affected or was observed by the declarant" (People v Nieves, 67 NY2d 125, 135 [1986]).
Here, although the responding officer described the complainant as speaking "hysterically," the time that had elapsed between the incident and the complainant's statements was too long to ensure an " 'impulsive and unreflecting' " response (People v Cummings, 31 NY3d 204, 209 [2018], quoting People v Caviness, 38 NY2d 227, 231 [1975]). The [*4]complainant's statements to the 911 operator were made at a grocery store away from the scene about 10 minutes after the event had concluded. Moreover, her statements to the police were made over a half hour after the event, which gave the complainant ample time to reflect and which cast serious doubt on the trustworthiness of her statements. While in other cases, such a time lapse may be considered short (see People v Jaber, 172 AD3d 1227 [2019]), in this case, where proof of defendant's guilt rested entirely on hearsay statements, the indicia of the statements' reliability must be more than just sufficient.
Compounding these errors was the court's admission, without limitation, of the DIR. While there was no objection on this ground, we, nonetheless, review the error in the interest of justice. Although the report was admissible for impeachment purposes as a prior inconsistent statement, there was no limiting{**69 Misc 3d at 7} instruction from the court directing the jury to consider it for this purpose (see People v Harris, 19 NY3d 679, 686 [2012]; People v Dorvil, 175 AD3d 708 [2019]). Since the evidence against defendant was based on hearsay, "the danger that the jury accepted [the complainant's DIR] statements for truth was real" (People v Harris, 19 NY3d at 686). Thus, by reading the contents of the report to the jury during summation, the prosecutor effectively used the report as direct evidence of defendant's guilt (see People v Thomas, 143 AD3d 923 [2016]).
While each of the above errors, standing alone, may not require reversal of defendant's conviction, we find that their cumulative effect deprived defendant of a fair trial (see People v McGhee, 180 AD3d 26 [2019]; People v Goldstein, 196 Misc 2d at 745). The proof of guilt in this case was far from overwhelming and rested entirely on out-of-court statements made by an unidentified caller and the complainant, who testified for the defense at trial. In these circumstances, we conclude that defendant was denied a fair trial.
Accordingly, defendant's judgments of conviction are reversed and the matter is remitted to the Criminal Court for a new trial.

Aliotta, J. (dissenting and voting to affirm the judgments of conviction in the following memorandum). Defendant's appellate contention that he was denied a fair trial due to the improper admission into evidence, as excited utterances, of the recording of the complainant's 911 call and her statements to a police officer, is unpreserved for appellate review, as defense counsel never raised this specific objection in the Criminal Court (see CPL 470.05 [2]; People v Ramos, 12 AD3d 316, 317 [2004]). In any event, the argument has no merit, since a review of the record indicates that the complainant was upset and "under the stress of excitement caused by an external event," and lacked the reflective capacity for fabrication (People v Edwards, 47 NY2d 493, 497 [1979]; see also People v Dockery, 107 AD3d 913, 914 [2013]; People v Dominick, 53 AD3d 505, 505-506 [2008]). Consequently, the complainant's statements to the 911 operator and police officer were properly admitted into evidence as excited utterances.
In addition, defendant's contentions that he was denied a fair trial because the prosecutor read the contents of the domestic incident report (DIR) to the jury during summation and because [*5]the Criminal Court's charge to the jury about prior inconsistent{**69 Misc 3d at 8} statements was insufficient are unpreserved for appellate review, as no objections thereto were made at trial (see CPL 470.05 [2]; People v Castillo, 29 NY3d 935, 937 [2017]; People v Romero, 7 NY3d 911, 912 [2006]; People v Hansen, 153 AD3d 1431, 1432 [2017]), and these contentions should not be reviewed in the interest of justice. In any event, since the DIR was admitted into evidence without limitation, it was not improper for the prosecutor to read its contents to the jury during her summation, and, by doing so, she did not treat the DIR as evidence in chief.
Defendant further contends that he was denied a fair trial due to prosecutorial misconduct in that, during cross-examination, the prosecutor improperly posed questions regarding defendant's silence in failing to reach out to the police, and made improper comments regarding same during her summation. Defendant's contention regarding the questions posed during cross-examination is unpreserved for appellate review, as no objection was made thereto at trial (see CPL 470.05 [2]; People v Solomon, 16 AD3d 701 [2005]). Moreover, during summation, the Criminal Court overruled defense counsel's general "objection," which objection was insufficient to satisfy preservation requirements (see People v Tonge, 93 NY2d 838, 839-840 [1999]; People v Tevaha, 84 NY2d 879, 881 [1994]). These contentions should not be reviewed in the interest of justice.
In addition, defendant contends that he was denied a fair trial due to prosecutorial misconduct in that, during summation, the prosecutor baselessly accused defense counsel of colluding with defendant and the complainant to fabricate a defense, and asked the jury "is it such a coincidence that their stories are so in line." The Criminal Court sustained defense counsel's objection to these comments and agreed to strike the comments from the record. For the first time on appeal, defendant argues that the comments were never ultimately stricken from the record, and any instruction to the jury could not have cured the resulting prejudice in light of the prosecutor's persistent denigration of the defense. Defendant, however, had an obligation to inform the court of its failure to strike the comments in order to afford the court an opportunity to correct itself, and since defendant did not do so, he must be deemed to have waived any objection to that failure (see e.g. People v Whalen, 59 NY2d 273, 280 [1983]).
Contrary to defendant's argument, defense counsel's postsummation motion for a mistrial cannot be used as an objection{**69 Misc 3d at 9} to the cumulative effects of the comments the prosecutor made during her summation (see People v Romero, 7 NY3d at 912; People v Lawson, 163 AD3d 996, 999-1000 [2018]) and, in any event, I reject defendant's contention that the statements constituted a pervasive pattern of misconduct which denied defendant a fair trial (see People v Stahli, 159 AD3d 1055, 1059 [2018]). Moreover, error, if any, was harmless since there is no significant probability that the jury would have acquitted defendant but for the error (see People v Crimmins, 36 NY2d 230, 241-242 [1975]). The court instructed the jury that the statements made by the attorneys during summations are not evidence; that the jury's recollection of the evidence controlled; that they are the "sole finders of fact"; and they were to draw inferences and conclusions from the evidence. It is noted that when a defendant fails to object to a court's curative instruction, the instruction "must be deemed to have corrected the error to the defendant's satisfaction" (People v Heide, 84 NY2d 943, 944 [1994]; People v Anselmo, 164 AD3d 1462, 1463 [2018]; People v Muniz, 44 AD3d 1074, 1075 [2007]), and the jury is presumed to have followed the court's instructions (see People v Stone, 29 NY3d 166, 171[*6][2017]; People v Baker, 14 NY3d 266, 274 [2010]; People v Berg, 59 NY2d 294, 300 [1983]).
Defendant also contends that to
"the extent that defense counsel did not specifically object to all of the [prosecutor's] improprieties, or request a mistrial on all of the grounds raised on appeal, the Court should reach those issues in the interest of justice . . . the Court should find that defense counsel's failure to fully object to the prosecutor's misconduct deprived appellant of his right to effective assistance of counsel."
This contention, however, lacks merit since the prosecutor's comments were fair comments on the evidence and the reasonable inferences to be drawn therefrom (see People v Galloway, 54 NY2d 396, 399 [1981]; People v Ashwal, 39 NY2d 105, 109-110 [1976]), were within the bounds of permissible rhetoric, were responsive to comments made by defense counsel during summation (see People v Jackson, 160 AD3d 1125, 1129 [2018]; People v Vaughan, 151 AD3d 985, 986 [2017]), or otherwise did not deprive defendant of a fair trial (see People v Hugginis, 163 AD3d 719 [2018]; People v Hawley, 112 AD3d 968 [2013]). Defendant also has not shown that he "did not receive a fair trial because counsel's conduct was egregious and prejudicial" (People v Ambers, 26 NY3d 313, 317 [2015] [internal quotation{**69 Misc 3d at 10} marks omitted]). Consequently, defendant received the effective assistance of counsel under the federal and state standards (see Strickland v Washington, 466 US 668 [1984]; People v Benevento, 91 NY2d 708, 713-714 [1998]).
Defendant's remaining arguments lack merit or are unpreserved for appellate review.
Weston, J.P., and Siegal, J., concur; Aliotta, J., dissents in a separate memorandum.